UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD COURSER,

        Plaintiff,

v.

MICHIGAN HOUSE OF
REPRESENTATIVES, et al,

        Defendants.

Case No. 1:18-CV-00882

Hon. Gordon J. Quist

**ORAL ARGUMENT REQUESTED**

---

## DEFENDANT NORM SAARI'S MOTION TO DISMISS PLAINTIFF TODD COURSER'S AMENDED COMPLAINT

For the reasons set forth in the attached brief, Defendant Norm Saari, by his attorneys, hereby moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing with prejudice all counts stated against him in Plaintiff Todd Courser's Amended Complaint and granting Defendant Norm Saari any further relief this Court deems just and proper.

Respectfully Submitted,

EVANS LAW GROUP P.C.,

By: /s/ Cameron J. Evans
Cameron J. Evans (P47276)
950 W. University Drive, Suite 200
Rochester, MI 48307-1887
Phone: (248) 468-1485
Email: cevans@evanslawgrp.com
Attorney for Defendant Norm Saari

Dated: January 11, 2019

{ELG10825}

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD COURSER,

             Plaintiff,

v.

MICHIGAN HOUSE OF
REPRESENTATIVES, et al,

             Defendants.

Case No. 1:18-CV-00882

Hon. Gordon J. Quist

**ORAL ARGUMENT REQUESTED**

**DEFENDANT NORM SAARI'S BRIEF IN
<u>SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

Description                                                                                           Page

INDEX OF AUTHORITIES                                                                                  iii

CONCISE STATEMENT OF ISSUES PRESENTED                                                                 vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT                                           vii

INTRODUCTION                                                                                          1

FACTUAL BACKGROUND                                                                                    2

I.      Mr. Courser's Lawsuits Against Mr. Saari                                                       2

II.     Mr. Courser's Allegations Against Mr. Saari                                                    3

III.    Once Again, the Amended Complaint Omits Mr. Saari's Appointment to                             5
        the Public Service Commission Effective August 2, 2015

IV.     Gamrat and Mr. Courser Successfully Removed the Staff Members at the                           7
        Center of the Controversy

V.      Events Occurring after Mr. Saari's Appointment to the PSC                                      9

ARGUMENT                                                                                              9

I.      Standard of Review                                                                            9

II.     Certain of Mr. Courser's Claims are Barred by Statutes of Limitations                          10

        A.      Federal Wiretapping Act and Eavesdropping Claim                                        10

        B.      Slander and Defamation Claims                                                          11

        C.  Computer Fraud and Abuse Act, 18 USC § 2511                                                11

III.    Mr. Saari Is Not Vicariously Liable for Any Actions                                            11

IV.     Counts I (§ 1983) and II (§ 1985) Must be Dismissed                                            12

        A.      These Counts Are Barred by Immunity                                                    12

        B.      Mr. Courser Fails to State a Due Process Claim                                         14

C.      Mr. Courser Fails to State an Equal Protection Claim                                    14

D.      Mr. Courser's 42 U.S.C. § 1985 Claim Fails to State a Claim                        15

V.      Unconstitutional Vagueness Claim (Count III) is Improper Against Mr. Saari      16

VI.     Violation of the Fair and Just Treatment Clause (Count IV)                               16

VII.    Mr. Courser Fails to State a Claim for Violation of the Federal Wiretapping      17
        Act and Michigan Eavesdropping Statute (Count V)

VIII.   Violation of 18 USC § 1030 and MCL 752.791                                                   19

IX.     Mr. Courser's Libel, Slander and Defamation Claims (Count VII) Are Devoid     20
        of any Merit

X.      Mr. Courser Fails to State a Claim for Civil Stalking (Count VIII)                       21

XI.     Mr. Courser Fails to State a Claim for Invasion of Privacy and Intrusion          22
        Upon Seclusion (Count IX)

XII.    Mr. Courser Fails to State a Claim for Tortious Interference with a Business     23
        Relationship    (Count X)

XIII.   Mr. Courser Fails to State a Claim for Intentional Infliction of Emotional        23
        Distress and Negligent Infliction of Emotional Distress (Counts XI and XII)

XIV.    Mr. Courser Fails to State a Claim for Indemnification Count XIII                     24

XV.     Fraudulent Misrepresentation Claim (Count XIV)                                             25

XVI.    Violations of RICO (Count XV)                                                                         25

XVII.   Conspiracy to Violate RICO (Count XVI)                                                         26

XVIII.  Intentional Interference with or Destruction of Evidence/Spoliation of           26
        Evidence is Not a Recognized Cause of Action (Count XVII)

XIX.    Mr. Courser Fails to State a Claim for Civil Conspiracy (Count XVIII)             27

CONCLUSION                                                                                                             28

## INDEX OF AUTHORITIES

Case                                                                                                    Page(s)

Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,                                            28
    257 Mich. App. 365, 384; 670 N.W.2d 569, 580 (2003)

Ashcroft v. al-Kidd, 563 U.S. 731, 741, (2011)                                                            12

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009)                                                    9, 10, 18

Attorney Gen. v. Jochim, 99 Mich. 358, 367; 58 N.W.611, 613 (1894)                                        14

Bailey v. Trust Logistics, 2014 WL 1317502, at *3 (E.D. Mich. 2014)                                       26

Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999)                                                     15

Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted)                                      6

Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)                                                         9

Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993)                                        15

Bray v. Unified Prop. Grp., LLC, 2012 WL 5363792, at *4 (E.D. Mich. 2012)                                 26

Burks v. Perk, 470 F.2d 163, 165 (6th Cir. 1972)                                                          14

By Lo Oil Co. v. Dep't of Treasury, 267 Mich. App. 19, 40; 703 N.W.2d 822 (2005)                         16

Citizen in Charge, Inc., v. Husted, 810 F.3d 437, 440 (6th Cir. 2016)                                     13

Cole v. Jackson Nat'l Life Ins. Co., 2012 WL 360285,                                                      26
    *8 (W.D. Mich. 2010) (Quist, J.)

Craighead v. E. F. Hutton & Co., 899 F.2d 485, 495 (6th Cir. 1990)                                       26

Dallas v. Holmes, 137 F. App'x 746, 752 n.5 (6th Cir. 2005)                                               15

Duran v. The Detroit News, 200 Mich. App. 622, 630; 504 N.W.2d (1993)                                 22, 24

EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012)                                      13

Ferrara v. Detroit Free Press, Inc., 52 F. App'x 229 (2002)                                           17, 18

Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008)                                                          27

Fox v. Michigan State Police, 173 F. App'x 372, 376 (6th Cir. 2006) 15

Garback v. Lossing, 2010 WL 3733971, at *8 (E.D. Mich. Sept. 20, 2010) 19

Garvelink v. The Detroit News, 206 Mich. App. 604, 609; 522 N.W.2d 883 (1994) 20

Gonyea v. Motor Parts Fed. Credit Union, 192 Mich. App. 74, 77; 20
  480 N.W.2d 297 (1991)

Graham v. Ford, 237 Mich. App. 670, 674–75; 604 N.W.2d 713, 716 (1999) 24

Groves v. Dep't of Corr., 295 Mich. App. 1, 12; 811 N.W.2d 563 (2011) 16

H.J. Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 239 (1989) 25

Hange v. City of Mansfield, 257 F. App'x 887, 895 (6th Cir. 2007) 13

Hawkins v. Richter, E.D. Mich. Case No. 16-12945, issued March 16, 2017 20
  (Magistrate R&R, later adopted)

Helzer v. CBS Boring & Mach. Co., Inc., 1999 WL 33441300, 26
  *4 (Mich. Ct. App. June 8, 1999)

In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 276 n.78 (3d Cir. 2016) 18

Johnson v. Wayne Co., 213 Mich. App. 143, 155; 540 N.W.2d 66 (1995) 16

Lakeshore Cmty. Hosp. v. Perry, 212 Mich. App. 396; 538 N.W.2d 24 (1995) 23

Locricchio v. Evening News Ass'n, 438 Mich. 84, 115–16; 476 N.W.2d 112 (1991) 20

Lucas v. Awaad, 299 Mich. App. 345, 359; 830 N.W.2d 141, 150 (2013) 23

Martin v. City of Broadview Heights, 712 F.3d 951, 957 (6th Cir. 2013) 13

Mitan v. Campbell, 474 Mich. 21; 706 N.W.2d 420 (2005) 11

New York Times Co. v. Sullivan, 376 U.S. 254 (1964) 20

Ordway v. Bank of Am., N.A., No. 13-13236, 2013 WL 6163936 28
  (E.D. Mich. Nov. 20, 2013)

Palmer v. Allen, No. 14-cv-12247, 2016 WL 3405872 (E.D. Mich. June 21, 2016) 27

Rogers v. J.B. Hunt Transport, Inc., 466 Mich. 645, 651 (2002) 12

Rouch v. Enquirer & News of Battle Creek, 440 Mich. 238, 251;                  20
    487 N.W.2d 205 (1992)

Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)                  25

Sullivan v. Gray, 117 Mich. App. 476, 481; 324 N.W.2d 58 (1982)              17

United Rentals (N. Am.), Inc. v. Keizer, 202 F. Supp. 2d 727, 743 (W.D. Mich. 2002)    27

Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir. 1994)                  25

Weinstein v. Mortg. Capital Assocs., Inc., No. 2:10-cv-01551,                  27
    2011 WL 90085, at *9 (D. Nev. Jan. 11, 2011)

**STATUTES**

MCL 600.5805(11)                                                              10

MCL 691.1408                                                                  24

MCL 750.411                                                                   21

MCL 750.411h                                                                  21

MCL 752.791                                                                   19

18 USC § 1030                                                          11, 19, 20

18 U.S.C. § 1030(g)                                                           11

18 U.S.C. § 2511(2)(d)                                                        17

18 U.S.C. § 2520                                                       10, 17, 19

42 U.S.C. § 1985                                                              15

**COURT RULES**

Fed. R. Civ. P. 12(b)(6)                                          vii, 2, 6, 9, 10

Fed. R. Civ. P. 41                                                             3

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1. Are Plaintiff Todd Courser's claims barred based on the applicable statutes of limitation?

2. Are Plaintiff Todd Courser's claims barred by immunity?

3. Should Plaintiff Todd Courser's claims be dismissed for failure to properly plead and state a claim?

Plaintiff Todd Courser's Answer: "No."

Defendant Norm Saari's Answer: "Yes."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR RELIEF SOUGHT**

Defendant Norm Saari relies on Fed. R. Civ. P. 12(b)(6) and the additional authorities stated herein.

## INTRODUCTION

Plaintiff Todd Courser's ("Mr. Courser") Amended Complaint represents his fourth attempt to state a claim against Defendant Norm Saari ("Mr. Saari"). This 148 page, 676 paragraph vexatious pleading utterly fails to identify any factual references to support his claims. Instead, the mere 11 paragraphs that specifically reference Mr. Saari establish he was formerly the Chief of Staff to Representative Kevin Cotter ("Cotter"), he met with various staff, and his testimony during Select Committee Hearings was struck. From these allegations, Mr. Courser surmises that Mr. Saari must have conspired against him and directed a covert operation wherein he collected and published altered audio recordings in an effort to destroy Mr. Courser. Too bad there are no factual allegations that support these sensational claims as to Mr. Saari.

These are the same claims that Mr. Saari has been fighting for over two years, and Mr. Courser's actions in this matter are subject to sanctions. Over two years ago, when Mr. Courser filed his first lawsuit, Mr. Saari filed a motion to dismiss Mr. Courser's voluminous complaint and clearly outlined that Mr. Saari left his position as Chief of Staff to Cotter on August 1, 2015, and that Mr. Saari could not be held liable for Mr. Courser's outlandish allegations. See Courser v. Allard, et al., Case 1:16-cv-01108-GJQ-PJG ("Courser I"), Docket # 98, filed 11/23/16. Mr. Saari further outlined that many of Mr. Courser's claims failed as a matter of law. See id. Rather than respond to Mr. Saari's motion (or any of the other defendants' motions), Mr. Courser amended his complaint, dropping various claims, including Unconstitutional Vagueness, RICO, Invasion of Privacy, Negligence and NIED, and Conspiracy claims.[1] Ten minutes after amending his complaint, Mr. Courser voluntarily dismissed that lawsuit.

---

[1] For ease of reference, attached as Exhibit 1 is a chart showing Mr. Courser's various amendments.

Fast forward two years.  Mr. Courser filed this action, based on the same outlandish allegations from two years prior.  In that Complaint, Mr. Courser brought back some of the claims that he amended out of the previous action, including the invasion of privacy, negligence, and conspiracy claims.  Just as before, Mr. Saari timely filed a motion to dismiss, reminding Mr. Courser that Mr. Saari had no involvement based on his taking another position on August 1, 2015, that Mr. Courser's claims were baseless, and that many of his claims were now barred by applicable statute of limitations.  See Docket No. 28.

Rather than respond to Mr. Saari's and the other Defendants' dispositive motions, Mr. Courser continued his gamesmanship by filing an Amended Complaint.  This Amended Complaint contains 676 allegations, and brings back claims and allegations that were originally pleaded over two years ago in Courser I (e.g. RICO claims).  This convoluted Amended Complaint also adds additional frivolous and time-barred claims.   Despite the bulkiness of this Amended Complaint, Mr. Courser adds minimal factual detail relative to Mr. Saari and completely fails to address the glaring deficiencies previously identified.  For the reasons outlined in previous motions, as well as the reasons outlined below, Mr. Saari respectfully requests this Court grant his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and provide for such other relief that this Court deems just and equitable.

## FACTUAL BACKGROUND

### I.    Mr. Courser's Lawsuits Against Mr. Saari

A clear pattern has emerged.  Mr. Courser previously filed a lawsuit against various defendants, including Mr. Saari, on September 8, 2016.  Courser I, Dkt. No. 1.  On December 12, 2016, after Mr. Saari filed a motion to dismiss and most other defendants had filed motions to dismiss, Mr. Courser filed an Amended Complaint.  Id., Dkt. No. 121.  Ten minutes after that

filing, Mr. Courser voluntarily dismissed that action pursuant to Fed. R. Civ. P. 41. Id., Dkt. No. 123. On August 7, 2018, Mr. Courser filed his current lawsuit. Dkt. No. 1. Once again, Mr. Saari, as well as the other Defendants, filed dispositive motions. And once again, instead of responding, Mr. Courser amended his Complaint. This is a clear abuse of the judicial system, and Mr. Courser is wasting time and resources of all involved.

## II.    Mr. Courser's Allegations Against Mr. Saari

Since this Court is intimately familiar with the background of this matter, Mr. Saari will save all of the sordid details. In a nutshell, Mr. Courser, a former state representative, was caught having an extra-marital affair with another state representative, Cindy Gamrat ("Gamrat"), and he ultimately resigned his position as a state representative. Mr. Courser continues to refuse to accept any responsibility for the demise of his political career and attempts to cast blame on others, including Mr. Saari. Despite adding almost 100 pages and more than doubling the number of allegations in his Amended Complaint, Mr. Courser's specific references to Mr. Saari are largely unchanged:

| Complaint Filed August 2018 | Amended Complaint Filed December 28, 2018 |
|---|---|
| 12. Upon information and belief, Defendant NORM SAARI ("Saari") is a resident of Ingham County, Michigan and was the duly appointed Chief of Staff to Cotter. | 14. Upon information and belief, Defendant Norm Saari ("Saari") is a resident of Ingham County, Michigan and was the duly appointed Chief of Staff to Cotter. |
| 15. THE HOUSE, COTTER, BOWLIN, SWARTZLE, SAARI, MCBROOM and BEYDOUN may be collectively referred to as "Defendants." | 17. THE HOUSE, COTTER, BOWLIN, SWARTZLE, SAARI, MCBROOM and BEYDOUN may be collectively referred to as "Defendants." |
|  | 57. SAARI would later state to MSP on page 25 of the transcript, "And just, you know, and Kevin Cotter, from day one, tried to put a lasso around Courser and Gamrata (sic), and get them to be functional members of the caucus." Exhibit 10. |

| | |
|---|---|
| 27.  Upon information and belief, almost immediately, unbeknownst to Courser[,] Cotter, Saari, and Swartzle began meeting with Allard, Graham, and Cline in order to direct them to gather information against Courser. | 58.  Immediately, members of Cotter's team, including SAARI and SWARTZLE began meeting with Defendants' employees Allard, Graham, and Cline in order to direct them to gather information against Courser. a. . . . b . . . . c . . . . d. Jessica Jeurink (another employee of Defendants) coordinator for Defendants from the Speaker's Office in April of 2015, wrote Cline, "Keep me posted on all fronts" Exhibit 11 and 12.  Jeurink, COTTER's employee, asked Cline to keep her and SAARI informed. |
| 28.  Upon information and belief, Allard, Graham, and Cline began to issue reports to Saari and Swartzle about Courser after the meeting in January 2015 between Cotter and Courser. | 60.  Defendants' employees Allard, Graham, and Cline began to issue reports to SAARI and SWARTZLE about COURSER after the meeting in January 2015 between COTTER and COURSER. |
| 80.  On August 31, 2015, Cotter, Bowlin, Swartzle, Saari, and Beydoun published a report called the "Report on the Investigation of Alleged Misconduct by Representative Todd Courser and Representative Cindy Gamrat" (the HBO Report"). | 200.  On August 31, 2015, COTTER, BOWLIN, SWARTZLE, SAARI, and BEYDOUN published a report called the "Report on the Investigation of Alleged Misconduct by Representative Todd Courser and Representative Cindy Gamrat"  (the "HBO Report"). |
| 103.  Upon information and belief, The House, Cotter, Swartzle, and Saari directed Allard, Graham, and Cline to conduct this surveillance, including the illegal wiretaps. | Compare, ¶ 88 ("Defendants requested and directed their employees….") |
| 177.  Throughout the aforementioned time frame, Defendants and other non-named parties, acting as co-conspirators, had been spying on Courser.  Cotter, Swartzle, and Saari (and perhaps other Defendants) directed Allard, Graham, and Cline to act on behalf of the House. | 407.  Throughout the aforementioned time frame, Defendants and other non-named parties, acting as co-conspirators (including Allard, Graham, and Cline), had been spying on COURSER.  COTTER, SWARTZLE, and SAARI (and perhaps other Defendants) directed Allard, Graham, and Cline to act on behalf of the House. |
| 178.  Upon information and belief, Allard, Graham, Cline, Cotter, Swartzle, and Saari were working with Joe Gamrat, Horr, Krell, and other unidentified persons to conduct surveillance activities, record | 408.  Upon information and belief, Allard, Graham, Cline, COTTER, SWARTZLE, and SAARI were working with Joe Gamrat, Horr, Krell, and other unidentified persons to conduct |

| conversations, and send extortive text messages to Courser. | surveillance activities, record conversations, and send extortive text messages to COURSER. |
|---|---|
| | 261.  The evidence wherein explains why. Simply put, what the evidence shows, is that COTTER could not allow the hearings to be conducted as they had been before, because if he had, the unclean hands of himself and his staff SWARTZLE, BOWLIN, SAARI, BEYDOUN, Allard, Graham, and Cline would have been revealed.  And with the immense public attention this case had, that was much too great a risk for him to take.  So COURSER was denied any procedural due process in the hearing. |
| | 383.  Number of Witnesses Called by Committee (Table Row 8). During the previous expulsions, the House committees called numerous witnesses except in COURSER'S case.  For example, in regards to Dakin, the committee called 6 witnesses and for Jaye they called 24 witnesses, including multiple legislative aides.  In COURSER'S only 2 witnesses were called beyond Representatives COURSER and Bauer, House Business Office Director BOWLIN and Chief of Staff SAARI, whose testimony was stricken from the record by the chair.  Although the 2 Democrats on the committee requested and motioned to call the persons who made the allegations as witnesses, they were denied by Chair McBROOM and the Republicans. |

**III.    Once Again, the Amended Complaint Omits Mr. Saari's Appointment to the Public Service Commission Effective August 2, 2015**

As pointed out in response to Mr. Courser's initial lawsuit (Courser I, Dkt. No. 98, Page ID. 2910), as well as in the Motion to Dismiss Mr. Courser's Complaint in this lawsuit, Mr. Saari served as Chief of Staff to the Speaker of the House of Representatives for the State of Michigan from August 2013 through August 1, 2015.   Ex. 2, Report on the Investigation of Alleged Misconduct by Representative Todd Courser and Representative Cindy Gamrat (the "HBO

Report"), Saari Interview Excerpt, pp. 656–660.[2]  As Chief of Staff, Mr. Saari was responsible for addressing workplace issues, and employees were advised as such during House Business Office orientation.  Id., HBO Report Saari Interview Excerpt, pp. 656–660.

On July 22, 2015, Governor Snyder announced the appointment of Mr. Saari to serve as a Commissioner of the Public Service Commission ("PSC") serving "a six-year term commencing August 2, 2015 and expiring July 2, 2021."  Ex. 3, July 22, 2015, Press Release.  Although the Press Release is outside the scope of the Amended Complaint, this Court has the authority to take notice of such public records when ruling upon a Rule 12(b)(6) motion.  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

Unlike the U.S. Constitution that requires the U.S. Senate to approve a Presidential appointment by an affirmative act, the Michigan Constitution provides that a gubernatorial appointment is immediate and remains effective unless the Michigan Senate disapproves of the appointment within 60 session days after the appointment.  Mich. Const. Art. I, § 6.  On August 13, 2015, the Michigan Senate's Committee of Energy and Technology held an "advise and consent" hearing on Mr. Saari's appointment and approved a recommendation to the Senate "of advising and consenting to the appointment [of Mr. Saari]."  Ex. 4, August 13, 2015 Minutes of

---

[2] Mr. Courser has incorporated the HBO Report into his Amended Complaint.  Am. Compl. ¶ 60, n.3.  Consequently, the HBO Report and its contents are properly before this Court at this stage of the proceedings, and would otherwise be so because the HBO Report is a public, legislative document central to the Amended Complaint.  As Mr. Courser has done, rather than attach the 833-page document, Mr. Saari is attaching solely the relevant excerpts of the HBO Report.  The HBO Report can be found in its entirety at http://house.mi.gov/sessiondocs/2015-2016/testimony/Committee389-9-8-2015-4.pdf.

Committee on Energy and Technology.  The full Senate never voted and Mr. Saari's appointment, effective August 2, 2015, stood.

Many of Mr. Courser's claims rely on his representation to this Court that "[o]n August 31, 2015, Cotter, Bowlin, Swartzle, *Saari*, and Beydoun published a report called the 'Report on the Investigation of Alleged Misconduct by Representative Todd Courser and Representative Cindy Gamrat[.]'"  Am. Compl. ¶ 200 (emphasis added).  Of course, as noted above, Mr. Saari's appointment to the PSC was effective almost one month before the HBO Report was published. Moreover, even a cursory review of the HBO Report reveals that Mr. Saari was not the author. Rather, he was merely interviewed as a witness.

In the only other substantive allegation involving Mr. Saari, Mr. Courser alleges that Mr. Saari recounts his belief that Cotter was trying to teach Mr. Courser and Gamrat how to be "functional members of the caucus."  See Am. Compl. ¶ 57.  Again, when the MSP interview referenced is read in context, there is no question that Mr. Saari was referring to Mr. Courser and Gamrat's ability to work with their peers and exhibit the decorum that is expected in the legislature rather than arguing over furniture and seating selections.  See Ex. 10 to Am. Compl., pp. 18, 25. In fact, Mr. Saari repeatedly noted that the gossip regarding Mr. Courser's extra marital affair was of no import.  See Ex. 10 to Am. Compl., pp. 18–19, 24–25

## IV.  Gamrat and Mr. Courser Successfully Removed the Staff Members at the Center of the Controversy

In  November  2014,  Gamrat  and  Mr.  Courser  won  the  general  elections  for  State Representative seats in Michigan's 80th and 82nd Districts, respectively.  Am. Compl. ¶¶ 43–44. Defendants Keith Allard ("Allard"), Benjamin Graham ("Graham"), and Joshua Cline ("Cline") were assigned to work in Gamrat and Mr. Courser's offices, respectively.  Am. Compl.  ¶¶ 47–48 Within the first few months of their election as State Representatives, things began to fall apart for

Mr. Courser and Gamrat.  Indeed, the intricate web they weaved during their extra-marital affairs was disintegrating, and they would soon be forced to face the music.  In an attempt to avoid the consequences of their own actions, Mr. Courser alleges that Mr. Saari, along with others, began meeting with the Allard, Graham, and Cline to direct them to gather information against Mr. Courser, that periodic reports were given, and that the reports were part of an ongoing effort to assemble allegations to be used to injure and to erode Mr. Courser's credibility as a State Representative.  Id. ¶¶ 58–60.

Mr. Courser references various exhibits in an attempt to support his claim.  When those exhibits are read in context, they clearly do not support the allegations.  At most, those documents show that Mr. Saari addressed various workplace issues and supported Cline's efforts in securing new employment.  For example, while Mr. Courser relies on Exhibit 11 to the Amended Complaint (referenced in ¶ 58) to support his claim that Mr. Saari directed others to gather information against Mr. Courser, that document consists of text messages between Jessica Jeurink and Cline.  One, dated February 9, 2015, asks, "What is the best way to reach Norm to schedule a sit down ASAP."  The message does not give any context or indicate it was in any way related to Mr. Courser.   The crux of Mr. Courser's allegations against Mr. Saari appear to rely on the statement by Jessica Jeurink—not Mr. Saari—to "[k]eep her posted on all fronts."  See Exhibit 11 to Am. Compl., PageID 1422.  Read in context, Jessica Jeurink simply asked Cline to keep her posted regarding all of the job opportunities he identified earlier in the text conversation.  There is a complete dearth of any allegations that _Mr. Saari_ asked or directed any reports be given to him about Mr. Courser for any reason.

V.      **Events Occurring after Mr. Saari's Appointment to the PSC**

After Mr. Saari left his Chief of Staff position in Cotter's office for his appointment as a

Commissioner on the PSC, Gamrat and Mr. Courser's lives unraveled:

- On August 7, The Detroit News published an article regarding Gamrat and Mr. Courser's alleged improper actions.  Am. Compl. ¶ 135.

- After the Detroit News broke the story, then Speaker of the House Cotter "requested and directed Bowlin [not Mr. Saari] to 'investigate' and prepare a report on alleged misconduct by Courser and Gamrat."  Bowlin was the Chief Financial Officer and Business Director of the House.  Am. Compl. ¶ 193.

- While Bowlin was investigating the alleged misconduct, on August 19, 2015, the House of Representatives adopted House Resolution 129 ("HR 129"), which created a House select committee to examine the qualifications of Gamrat and Mr. Courser and to determine their fitness to continue holding the high office to which they were elected.  HR 129 directed the Speaker of the House to appoint six Representatives to the Select Committee.  Mr. Saari was not a Representative and was not appointed to the Select Committee.  Am. Compl. ¶ 204.

- Bowlin presented his findings on August 31, 2015, in the HBO Report.  Am. Compl. ¶ 200.

- On September 1, 2015, the House Select Committee met and adopted the rules for the Select Committee. Am. Compl. ¶ 204.

- On September 8, 2015, the Select Committee Hearings began.  Am. Compl. ¶ 208.

- On September 11, 2015, Mr. Courser resigned.  Am. Compl. ¶ 237.

## ARGUMENT

I.      **Standard of Review**

Pursuant to Fed. R. Civ. P. 12(b)(6), courts must first identify all conclusory allegations

that are not entitled to a presumption of truth, disregard them, and then consider whether any

remaining factual allegations "plausibly suggest an entitlement to relief," which means that a

complaint must contain factual allegations sufficient to "raise the right of relief above the

speculative level."  Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atlantic v. Twombly,

550 U.S. 544, 555 (2007).  As the Supreme Court has made clear, specific factual allegations are required to satisfy Rule 12(b)(6)—"labels and conclusions . . . will not do."  Iqbal, 556 U.S. at 678; see also id. at 677 (observing "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice.").

## II.    Certain of Mr. Courser's Claims are Barred by Statutes of Limitations

Assuming the statute of limitations was tolled during the 95 days (13 weeks and 4 days) Courser I was pending, the statute of limitations for any claim against Mr. Saari would be extended by 95 days.[3]  Even with this extension, a majority of Mr. Courser's claims against Mr. Saari are barred by the applicable statute of limitations.

### A.    Federal Wiretapping Act and Eavesdropping Claim

Any claim under the Federal Wiretapping Act and Eavesdropping Statute must be filed within two years of its accrual.  18 USC § 2520.  The initial Complaint was not filed until August 7, 2018.  For his claim against Mr. Saari to be timely, it had to accrue on or after May 4, 2016 (two years prior to filing of Complaint, plus 95 days).  Here, the Complaint is devoid of any specific allegation occurring after May 4, 2016 involving Mr. Saari.  This is not surprising given that Mr. Saari left his position as Chief of Staff to Cotter effective August 2, 2015.  Accordingly, this claim is barred by the statute of limitations.

---

[3] Mr. Saari is not conceding that Mr. Courser's claims were, in fact, tolled during the pendency of Courser I.  After all, a complaint dismissed without prejudice does not toll the statute of limitations."  Fonseca v. United States, No. 1:15CV159, 2015 WL 6560646, at *2 (N.D. Ohio Oct. 29, 2015).

### B.     Slander and Defamation Claims

Libel, slander, and defamation claims are subject to a one year statute of limitations.  MCL 600.5805(11).  Thus, Mr. Courser must allege facts showing these claims accrued against Mr. Saari on or after May 4, 2017 (one year prior to filing of Complaint, plus 95 days).  Again, there are no factual allegations against Mr. Saari within that time frame.  Moreover, Mr. Courser may not claim that the alleged statements (which have yet to be identified) were republished to save these claims. The Michigan Supreme Court in Mitan v. Campbell, 474 Mich. 21; 706 N.W.2d 420 (2005), held that the first publication of an allegedly defamatory statement triggers the running of this statute of limitations.  Therefore, Mr. Courser's slander and defamation claims are barred by the statute of limitations.

### C.  Computer Fraud and Abuse Act, 18 USC § 1030

An action under the Computer Fraud and Abuse Act must be brought within two years of its occurrence to be timely.  See 18 U.S.C. § 1030(g).  Mr. Courser claims that his computer passwords, emails, text messages, and voice messages were used in violation of this act to "extort Courser to resign from office."  Am. Compl. ¶ 435.  Mr. Courser resigned from office in September 2015.  Since the Complaint in this matter was not filed until August 2018, this claim is time-barred.

## III.    Mr. Saari Is Not Vicariously Liable for Any Actions

Throughout his Amended Complaint, Mr. Courser attempts to hold Defendants—including Mr. Saari—vicariously liable for the actions of Allard, Cline, and Graham.   There are no allegations that Mr. Saari personally employed these individuals; instead, Mr. Saari was the Chief of Staff who was responsible for coordinating paperwork for Republican Representative staff placements.  See Ex. 10 to Am. Compl., pp. 3–4.   Accordingly, Mr. Saari was not an employer

and cannot be held personally liable for Allard, Graham, or Cline's actions.  Moreover, as the Supreme Court of Michigan has pointed out,

> An employer is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control. For example, it is well established that an employee's negligence committed while on a frolic or detour, Drobnicki v. Packard Motor Car Co., 212 Mich. 133, 180 N.W. 459 (1920), or after hours, Eberle Brewing Co. v. Briscoe Motor Co., 194 Mich. 140, 160 N.W. 440 (1916), is not imputed to the employer. In addition, even where an employee is working, vicarious liability is not without its limits. For example, we have held that "there is no liability on the part of an employer for torts intentionally or recklessly committed by an employee beyond the scope of his master's business." Bradley v. Stevens, 329 Mich. 556, 562, 46 N.W.2d 382 (1951).

Rogers v. J.B. Hunt Transport, Inc., 466 Mich. 645, 651 (2002).

Gathering evidence regarding Mr. Courser and Gamrat's affair was clearly not within Allard, Cline, or Graham's scope of employment, and they obviously did not have the authority to allegedly engage in such conduct.  Further, gathering such evidence is not within the scope of the business of the Michigan Legislature.  Thus, Mr. Courser cannot look to vicarious liability to save his claims.

## IV.    Counts I (§ 1983) and II (§ 1985) Must be Dismissed

### A.    These Counts Are Barred by Immunity

This Court has already determined that "[i]n engaging in the investigation of Gamrat's and Courser's activities, recommending a particular outcome, and voting on Gamrat's expulsion, the House Defendants [including Mr. Saari] all engaged in legislative activity."  Gamrat v. Allard, 16-CV-01094, March 15, 2018 Opinion, p. 9, Dkt. No. 65, Page ID. 1348.   Accordingly, Mr. Saari's actions are protected by absolute legislative immunity.

Further, as this Court has already opined, Mr. Saari is shielded from liability based on qualified immunity.  Id.  When a defendant raises the qualified immunity defense, the burden shifts

to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every reasonable official would have understood that what he [was] doing violate[d] that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741, (2011) (internal quotations omitted).   To determine whether qualified immunity applies, the Court must look to whether (1) the facts alleged violate a constitutional right; and (2) if the right at issue was "clearly established" when the event occurred such that a reasonable officer would have known that his conduct violated it.   Martin v. City of Broadview Heights, 712 F.3d 951, 957 (6th Cir. 2013).   Qualified immunity applies if the plaintiff fails to show either prong.   Citizen in Charge, Inc., v. Husted, 810 F.3d 437, 440 (6th Cir. 2016).

For a claim for a violation of procedural due process, the plaintiff has the burden of showing that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest."   EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012).

Unlike his counterpart Gamrat, Mr. Courser was not removed from office—he chose to voluntarily resign.   Accordingly, Mr. Courser cannot satisfy a threshold element as Mr. Saari did not deprive him of a liberty or property interest.   Rather, Mr. Courser's own resignation resulted in the loss of his job.   Hange v. City of Mansfield, 257 F. App'x 887, 895 (6th Cir. 2007) (holding plaintiff was not "deprived of this property interest" because he "was never terminated.").

Moreover, in Michigan, holding a public office does not constitute a property interest.   As the Michigan Supreme Court explained:

> A public office cannot be called "property," within the meaning of these constitutional provisions. If it could be, it would follow that every public officer, no matter how insignificant the office, would have a vested right to hold his office until the expiration of the term. Public officers are created for the purposes of government. They are delegations of portions of the sovereign

> power for the welfare of the public. They are not the subjects of
> contract, but they are agencies for the state, revocable at pleasure by
> the authority creating them, unless such authority be limited by the
> power which conferred it.

Attorney Gen. v. Jochim, 99 Mich. 358, 367; 58 N.W.611, 613 (1894); see also Burks v. Perk, 470

F.2d 163, 165 (6th Cir. 1972) (noting that "public office is not property within the meaning of the

Fourteenth Amendment").

Further, there are no cases suggesting that the law is clearly established.  To the contrary,

in March 2018, this Court noted it was unaware of any case standing for the proposition that "an

elected public official expelled from office has a property interest in [his] office protected by the

Due Process Clause.  Accordingly, Count I and II fail on immunity grounds alone."  Gamrat v.

Allard, 16-CV-01094, March 15, 2018 Opinion, p. 12, Dkt. No. 65, Page ID. 1351.

### B.     Mr. Courser Fails to State a Due Process Claim

In addition, Mr. Courser's due process claim boils down to unfounded allegations that his

rights were violated when he was "forced" to resign from his elected position and denied ample

pre- or post-hearing opportunities.  It is undisputed that Mr. Saari was not an elected member of

the House of Representatives, he was Cotter's Chief of Staff.  Thus, Mr. Saari was not a member

of the House of Representatives, and Mr. Saari did not have any authority to remove Mr. Courser

from office.  Moreover, Mr. Saari's involvement with the House of Representatives ended as of

August 1, 2015, as his appointment to the PSC was effective August 2, 2015—before any due

process claim could have accrued.

### C.     Mr. Courser Fails to State an Equal Protection Claim

Mr. Courser alleges that his rights under the Equal Protection Clause of the Fourteenth

Amendment were violated because other individuals who allegedly violated the House rules were

not investigated or prosecuted.  Am. Compl. ¶¶ 278–281.  To survive a motion to dismiss, Mr.

Courser must allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Indeed, "a person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999). Here, Mr. Courser simply claims unfair treatment based on his alleged refusal to sign the Caucus Pledge. Am. Compl. ¶ 283. This is not a protected classification, and this claim fails as a matter of law.

### D. Mr. Courser's 42 U.S.C. § 1985 Claim Fails to State a Claim

Mr. Courser now alleges that he is entitled to relief under § 1985(1) because he was prevented from performing his duties as a State Legislator. Am. Compl. ¶ 297. As pointed out in Mr. Saari's earlier brief, this section only applies to federal officers. Since Mr. Courser has admitted he was not a federal officer, this claim automatically fails. See, e.g., Dallas v. Holmes, 137 F. App'x 746, 752 n.5 (6th Cir. 2005).

Mr. Courser has no claim under § 1985(2) because he does not allege a conspiracy to interfere with the judicial process. "[T]he first clause of § 1985(2) . . . prohibits conspiracies to influence parties, witness, or jurors in federal court proceedings." Fox v. Michigan State Police, 173 F. App'x 372, 376 (6th Cir. 2006). "[T]he second clause of § 1985(2) . . . prohibits conspiracies to interfere with due process in state courts with the intent to deprive persons of their equal protection rights . . . [and] a plaintiff must allege that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id.

Likewise, Mr. Courser has no claim under § 1985(3) because he does not allege any class-based, invidiously discriminatory animus behind Mr. Saari's alleged actions. Such factual allegations are necessary in the context of a conspiracy claim under § 1985(3). Bray v. Alexandria

Women's Health Clinic, 506 U.S. 263, 268 (1993).  Therefore, this claim should be dismissed for failing to state a claim upon which relief may be granted.

## V.  Unconstitutional Vagueness Claim (Count III) is Improper Against Mr. Saari

Mr. Courser seeks to have Article IV, § 16 of the Michigan Constitution declared unconstitutional, a temporary restraining order, preliminary and permanent injunction issued against the House and any of its agents, as well as monetary damages awarded in his favor.  Am. Compl. ¶ 312 and Wherefore clause.  It is unclear whether Mr. Courser intends Mr. Saari be a defendant relative to this claim, as paragraph 313 of the Amended Complaint generally refers to "Defendants," but paragraph 312 refers to "The House."  In any event, Mr. Saari was not working in a position where he enforces the Constitution.  Accordingly, Mr. Saari should be dismissed relative to this claim.

## VI.  Violation of the Fair and Just Treatment Clause (Count IV)

Mr. Courser added a Violation of the Fair and Just Treatment Clause of Article I, § 17 of the Michigan Constitution to his myriad of unfounded claims.  An individual, firm, corporation, or voluntary association's right to fair and just treatment exists only in the context of legislative and executive hearings and investigations, By Lo Oil Co. v. Dep't of Treasury, 267 Mich. App. 19, 40; 703 N.W.2d 822 (2005); Johnson v. Wayne Co., 213 Mich. App. 143, 155; 540 N.W.2d 66 (1995), and not before a hearing or investigation commences or after a hearing or investigation ceases.  Groves v. Dep't of Corr., 295 Mich. App. 1, 12; 811 N.W.2d 563 (2011). For an investigation to implicate the fair and just treatment clause, the investigation must consist of a "searching inquiry for ascertaining facts" or a "detailed or careful examination of the events surrounding [a] plaintiff's misconduct."  Groves, 295 Mich. App. at 12, quoting Messenger v. Dep't of Consumer & Indus. Servs., 238 Mich. App. 524, 534; 606 N.W.2d 38 (1999).  Moreover,

the fair and just treatment clause requires some "active conduct" engaged in by the state actor during the investigation. <u>By Lo Oil Co.</u>, 267 Mich. App. at 41.

In a nutshell, Mr. Courser claims he was treated unfairly during the HBO Investigation and subsequent Select Committee Hearings. <u>See</u> Am. Compl., ¶¶ 314–405. This claim is obviously not actionable against Mr. Saari as Mr. Saari was merely a witness in the HBO Investigation and Select Committee Hearings. In fact, as Mr. Courser acknowledges, Mr. Saari's testimony was stricken and not even considered during the Hearings. <u>See</u> Am. Compl. ¶ 383. Mr. Saari had no involvement in the decision to commence the HBO investigation, nor in any decision during the investigation or subsequent Committee Hearings. Stated simply, Mr. Courser has not alleged any "active conduct" by Mr. Saari during the investigation or hearing, and Mr. Saari must be dismissed from this claim.

**VII.  Mr. Courser Fails to State a Claim for Violation of the Federal Wiretapping Act and Michigan Eavesdropping Statute (Count V)**

Mr. Courser does not allege in his Amended Complaint that Mr. Saari ever unlawfully recorded a conversation in which Mr. Courser was a participant. Rather, Mr. Courser alleges only that "upon information and belief" House members worked with other Defendants to conduct surveillance on Mr. Courser. Am. Compl. ¶ 408. Mr. Courser's claims against Mr. Saari fail as a matter of law.

A participant to a conversation may lawfully record the conversation without the consent or knowledge of any other party to the conversation without violating Michigan's Eavesdropping Statute. <u>Sullivan v. Gray</u>, 117 Mich. App. 476, 481; 324 N.W.2d 58 (1982); <u>Ferrara v. Detroit Free Press, Inc.</u>, 52 F. App'x 229 (2002). Likewise, under federal law, a participant may lawfully record a conversation without any other party's knowledge or consent unless the recording "is

intercepted for the purposes of communicating a criminal or tortious act in violation of the Constitution or laws of the United States or any State."  18 U.S.C. § 2520

(2)(d).  <u>See also</u> <u>Ferrara</u>, <u>supra</u>, "Moreover, third-party disclosure of an intercepted communication is only prohibited where the interception violated the statute." <u>Ferrara</u>, <u>supra</u> (citing <u>Smith v. Cincinnati Post & Times-Star</u>, 475 F.2d 740, 741 (6th Cir. 1973)).

Here, despite hundreds of allegations about non-parties' text messages and unauthorized recordings, there is not one scintilla of evidence that Mr. Saari even knew they existed, much less that Mr. Saari either used or divulged them.  In fact, the HBO Report noted that Mr. Saari did not even have access to the recording.  Ex. 5, p. 3 (***the audio recordings were not made available until the current investigation began***) (emphasis added); <u>see also</u> Exhibit 10 to Am. Compl., MSP Interview p. 19.

Mr. Courser vaguely states that "Defendants" "directed" others to take the actions described in the Amended Complaint.  Am. Compl. ¶ 409.  This allegation, without more, fails to meet the federal pleading standards.  <u>See</u> <u>In re Nickelodeon Consumer Privacy Litig.</u>, 827 F.3d 262, 276 n.78 (3d Cir. 2016) (dismissing claim under the Federal Wiretap Act because "[t]he plaintiffs' allegations of procurement in this case are entirely conclusory and therefore fail to comport with 'the Supreme Court's teaching that all aspects of a complaint must rest on "well-pleaded factual allegations" and not mere conclusory statements'") (quoting <u>Finkelman v. Nat'l Football League</u>, 810 F.3d 187, 194 (3d Cir. 2015); <u>Iqbal</u>, 556 U.S. at 678–79)).  Indeed, the only allegations in the Amended Complaint are that there were meetings with Allard, Graham, and Cline where they were allegedly directed to gather information against Mr. Courser.  Am. Compl. ¶¶ 57–58.  In reality, Mr. Saari met with various individuals regarding workplace issues.  Ex. 2.  It

is a significant, conclusory leap to somehow presume those meetings resulted in Mr. Saari directing that surveillance and wiretapping occur.

Further, Mr. Courser's Amended Complaint is devoid of any factual allegations supporting his contention that Mr. Saari used or disclosed information that he knew was obtained from an unlawful recording.  Mr. Courser does not allege what information Mr. Saari obtained through the interception of a wire, oral, or electronic communication, how Mr. Saari allegedly used the information, or to whom Mr. Saari allegedly disclosed information.  Indeed, Mr. Courser's "group pleading" is eerily similar to Gamrat's Complaint which was previously dismissed by this Court because the allegations did "nothing more than parrot the statute, 'contribute nothing to the sufficiency of the complaint,' and are insufficient to render the wiretapping/eavesdropping and stalking claims plausible."  Gamrat v. Allard, 16-CV-01094, March 15, 2018 Opinion, p. 19, Dkt. No. 65, Page ID. 1358.

Simply put, Mr. Courser's Amended Complaint is devoid of factual allegations to support claims against Mr. Saari based on the recording of certain of Mr. Courser's conversations.  Further, as this Court previously noted, 18 U.S.C. § 2520 does not impose civil liability for procurement. Gamrat v. Allard, 16-CV-01094, March 15, 2018 Opinion, p. 17, Dkt. No. 65, Page ID. 1356. Therefore, Mr. Courser's Amended Complaint fails to state a claim against Mr. Saari under either the Federal Wiretapping Act or Michigan's Eavesdropping Act, and these claims should be dismissed.

## VIII.  Violation of 18 USC § 1030 and MCL 752.791

Mr. Courser now asserts a claim under the Computer Fraud and Abuse Act, 18 USC § 1030, as well as the state law counterpart, Fraudulent Access to Computers, Computer Systems, and Computer Networks, MCL 752.791.  Mr. Courser's claim under MCL 752.791 is frivolous.

The statutory provisions referenced in Mr. Courser's Amended Complaint fall under Chapter 752 of the Michigan's Compiled Laws entitled "Crimes and Offenses."  These are criminal statutes, and no private right of action is authorized.  See Garback v. Lossing, 2010 WL 3733971, at *8 (E.D. Mich. Sept. 20, 2010); see also Hawkins v. Richter, E.D. Mich. Case No. 16-12945, issued March 16, 2017 (Magistrate R&R, later adopted).  Accordingly, this claim fails as a matter of law.

Mr. Courser alleges that his computers were improperly accessed, information was shared, and Mr. Courser was damaged in violation of the Computer Fraud and Abuse Act.  Again, there is not one iota of evidence that Mr. Saari improperly accessed Mr. Courser's computer, passwords, or any other electronic device, or that he transmitted any information.  Accordingly, these claims fail as to Mr. Saari.  See 18 USC § 1030.

## IX.    Mr. Courser's Libel, Slander and Defamation Claims (Count VII) Are Devoid of any Merit

Despite the fact that criminal charges are still pending against him in two separate jurisdictions, Mr. Courser goes to great lengths to claim that "Defendants" are responsible for the demise of his reputation.  Regardless, there are no particularized allegations against Mr. Saari which state a claim of libel, slander, or defamation.

To state a claim for defamation, Mr. Courser must show that the Mr. Saari made a false, defamatory, and unprivileged statement about him.  Rouch v. Enquirer & News of Battle Creek, 440 Mich. 238, 251; 487 N.W.2d 205 (1992); Locricchio v. Evening News Ass'n, 438 Mich. 84, 115–16; 476 N.W.2d 112 (1991).  As a public official, Mr. Courser must go one step further and allege that the defamatory statement was made with "actual malice."  New York Times Co. v. Sullivan, 376 U.S. 254 (1964).  Furthermore, Mr. Courser must prove actual malice with "convincing clarity."  Id. at 295–296.

A complaint brought by a public official libel plaintiff must plead all these elements with specificity.  Gonyea v. Motor Parts Fed. Credit Union, 192 Mich. App. 74, 77; 480 N.W.2d 297 (1991).  Whether a plaintiff's allegations satisfy this requirement is a question of law for the courts. Garvelink v. The Detroit News, 206 Mich. App. 604, 609; 522 N.W.2d 883 (1994).

Mr. Courser contends that "defendants" purposefully altered and published audiotapes that harmed him.  Despite years of litigation—and over 600 paragraphs in his Amended Complaint— Mr. Courser has not alleged anything that connects Mr. Saari to those alleged recordings, much less to any decision to alter them.

At most, Mr. Courser claims that "[o]n August 31, 2015, Cotter, Bowlin, Swartzle, Saari, and Beydoun published a report called the 'Report on the Investigation of Alleged Misconduct by Representative Todd Courser and Representative Cindy Gamrat' (the 'HBO Report')."  Am. Compl. ¶ 200.  This allegation as it relates to Mr. Saari is not supported by reality.  Mr. Saari's appointment to the PSC was effective almost one month before the HBO Report was published. Moreover, even a cursory review of the HBO Report reveals that Mr. Saari did not author the HBO Report; instead, he was a witness that was interviewed as part of that investigation.

In addition, the notes from Mr. Saari's interview contained in the HBO Report contradict Mr. Courser's claim that Mr. Saari was trying to defame him.  Instead, according to the notes, Mr. Saari merely indicated that he addressed various HR issues and that he heard rumors about a relationship between Gamrat and Mr. Courser that he was unable to confirm or deny.  Ex. 2.  This hardly equates to defamation, libel, or slander.  As a matter of law, these claims fail.

## X.  Mr. Courser Fails to State a Claim for Civil Stalking (Count VIII)

Mr. Courser's next claim is that "Defendants' actions as described above were prohibited by MCL 750.411h and constituted stalking as defined by Michigan law."  Am. Compl. ¶ 488.  Mr.

Courser does not make a single allegation that Mr. Saari personally engaged in activities prohibited under MCL 750.411.  Instead, Mr. Courser attempts to hold Mr. Saari liable for stalking based solely on one vague and conclusory allegation that Mr. Saari "directed" the alleged stalking activities.  Accordingly, this claim is inadequately pleaded and must be dismissed.

## XI.   Mr. Courser Fails to State a Claim for Invasion of Privacy and Intrusion Upon Seclusion (Count IX)

The Amended Complaint is devoid of any facts alleging Mr. Saari invaded Mr. Courser's privacy or published any misleading or defamatory information.  Further, the information which came to light was that Mr. Courser was having an illicit affair with a legislative colleague and that Mr. Courser had invented a ridiculous plan in an attempt to cover up the affair.  Where, as here, private facts disclosed are of legitimate concern to the public, no cause of action exists.   Duran v. The Detroit News, 200 Mich. App. 622, 630; 504 N.W.2d (1993) (a cause of action for public disclosure of private facts requires the disclosure of information that would be highly offensive to a reasonable person and of no legitimate concern to the public, and the information disclosed must be of a private nature that excludes matters already of public record or otherwise open to the public eye).

Mr. Courser's claim for false light invasion of privacy fares no better.  It is entirely unclear what "false allegations" were disclosed that were embarrassing to Mr. Courser.  Am. Compl. ¶ 503.  The only "statement" attributable to Mr. Saari is that he heard a rumor that Mr. Courser and Gamrat had an affair.  As this matter has played out, it has become clear that the rumor was true, and therefore no false allegations can be attributed to Mr. Saari.

Mr. Courser also alleges invasion of privacy by intrusion. Am. Compl. ¶¶ 504–508. To establish an action for intrusion, Mr. Courser must show: (1) an intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, (3) by the use of a method that is

objectionable to the reasonable person." <u>Duran</u>, 200 Mich. App. at 630.  Here, there are no factual

allegations that Mr. Saari made any intrusions into Mr. Courser's private life.  Thus, Mr. Courser's

invasion of privacy by intrusion claim fails.

**XII.  Mr. Courser Fails to State a Claim for Tortious Interference with a Business Relationship  (Count X)**

Mr. Courser generally claims that "Defendants" were aware they were publishing

misleading articles that would reach his clients and cause them to believe he was a criminal.  Am.

Compl. ¶ 515.  There are no allegations that Mr. Saari published any article, that he knew the

information would reach any clients, much less that he tried to paint Mr. Courser as a criminal.  At

most, Mr. Saari consented to an interview as part of an investigation, and notes from that interview

were published as part of the HBO Report.  Further, Mr. Courser's claim for interference with

contractual relations is based on the same allegations as his defamation and libel claims.  The

Michigan Court of Appeals has held that a plaintiff's claim for tortious interference cannot survive

if it is based on the same speech as a defamation claim that has been dismissed.  <u>Lakeshore Cmty.</u>

<u>Hosp. v. Perry</u>, 212 Mich. App. 396; 538 N.W.2d 24 (1995).  Accordingly, this claim must fail as

well.

**XIII.  Mr. Courser Fails to State a Claim for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress (Counts XI and XII)**

To establish a claim for intentional infliction of emotional distress, a plaintiff must show:

"(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness,

(3) causation, and (4) the severe emotional distress of the plaintiff."  <u>Lucas v. Awaad</u>, 299 Mich.

App. 345, 359; 830 N.W.2d 141, 150 (2013) (quotation omitted). The threshold for showing

extreme and outrageous conduct is high, and is found:

> only where the conduct complained of has  been so outrageous in
> character, and so extreme in degree, as to go beyond all possible

> bounds of decency, and to be regarded as atrocious and utterly
> intolerable in a civilized community . . . It is not enough that the
> defendant has acted with an intent that is tortious or even criminal .
> . . or even that his conduct has been characterized by "malice," or a
> degree of aggravation that would entitle the plaintiff to punitive
> damages for another tort. . . .The test is whether . . . an average
> member of the community would . . . exclaim, "Outrageous!"

Graham v. Ford, 237 Mich. App. 670, 674–75; 604 N.W.2d 713, 716 (1999) (citations omitted).

The facts alleged by Mr. Courser, taken as true, do not meet this high standard of showing "outrageous" conduct. The allegations in the Amended Complaint regarding Mr. Saari will not, as a matter of law, make "an average member of the community…exclaim, 'Outrageous!'"

Mr. Courser's claim for negligent infliction of emotional distress is unwarranted by existing law. Michigan courts have refused "to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result.'" Duran v. The Detroit News, 200 Mich. App. 622; 504 N.W.2d 715 (1993). Mr. Courser has failed to allege that he witnessed an injury to a third party and that he suffered some emotional distress as a result. Consequently, this claim against Mr. Saari should be dismissed.

## XIV. Mr. Courser Fails to State a Claim for Indemnification Count XIII

Count XIII asserts that Defendants, including Mr. Saari, are required to indemnify Mr. Courser in the civil and criminal actions against him. As pointed out in earlier briefing, MCL 691.1408 does not mandate indemnification as Mr. Courser suggests. By continuing to claim he is entitled to automatic indemnification, Mr. Courser is purposefully misleading this Court. In reality, the relevant statute grants a ***governmental agency discretion*** to indemnify an employee against a suit stemming from the employee's negligence while acting within the scope of his/her authority. MCL 691.1408. Stated simply, the indemnification statute does not apply to individual

defendants such as Mr. Saari.  Instead, the statute allows a governmental agency to indemnify if it chooses to do so.  Accordingly, the indemnification claim against Mr. Saari must be dismissed as a matter of law.

## XV.   Fraudulent Misrepresentation Claim (Count XIV)

Mr. Courser's Fraudulent Misrepresentation claim is against Swartzle and Beydoun only. See p. 127 of Am. Compl.  Accordingly, this claim does not apply to Mr. Saari.

## XVI.   Violations of RICO (Count XV)

To state a civil RICO claim, Mr. Courser must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).  Mr. Courser's RICO claim fails for numerous reasons.

Mr. Courser's Amended Complaint fails to allege sufficiently a pattern of racketeering activity.  Mr. Courser must allege facts showing "that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 239 (1989).  Continuity can be shown either by a closed- or an open-ended concept.  The open-ended concept is present when "the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit."  Id. at 242. Given the Michigan voters elect state representatives every two years and all state representatives are subject to a three-term limit, Mich. Const. Art. IV, § 54, Mr. Courser cannot rely upon the open-ended concept.  Mr. Courser also cannot satisfy the closed-ended concept.  A closed-ended concept requires "a series of related predicates extending over a substantial period of time."  H.J. Inc., 492 U.S. at 242.  Because Congress was concerned with "long-term criminal conduct," predicate acts "extending over a few weeks or months and threatening no future criminal conduct do not satisfy this [the close-ended] requirement."  Id.  Applying this rule of law, the Sixth Circuit

has held that predicate acts over a 17-month period do not satisfy the closed-ended concept. Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir. 1994).  Here, any alleged predicate acts alleged committed by Mr. Saari would have had to occur between January 14, 2015, the date Mr. Courser was sworn into office, Am. Compl. ¶ 49, and August 1, 2015, the last day Mr. Saari was Chief of Staff.  This short period of time does not satisfy the closed-ended concept.

In addition, Mr. Courser has failed to allege a pattern of racketing activity by Mr. Saari. There is no factual allegation that Mr. Saari unlawfully recorded any conversation, sent any extortion text message, or sent any type of communication in which he engaged in any unlawful activity.  Cole v. Jackson Nat'l Life Ins. Co., 2012 WL 360285, *8 (W.D. Mich. 2010) (Quist, J.) (citing Walters v. First Tenn. Bank, N.A., 855 F.2d 276, 273 (6th Cir. 1988)).

## XVII.  Conspiracy to Violate RICO (Count XVI)

This dismissal of Mr. Courser's RICO claim in Count 15 mandates the dismissal of Mr. Courser's RICO conspiracy claim in Count 16.  Craighead v. E. F. Hutton & Co., 899 F.2d 485, 495 (6th Cir. 1990) (dismissing plaintiffs' RICO conspiracy claim "in light of the dismissal of their other RICO counts.").

## XVIII. Intentional Interference with or Destruction of Evidence/Spoliation of Evidence is Not a Recognized Cause of Action (Count XVII)

It is well-established that neither Michigan nor federal law permit independent causes of action arising out of an alleged spoliation of evidence.  Bailey v. Trust Logistics, 2014 WL 1317502, at *3 (E.D. Mich. 2014), citing Teel v. Meredith, 284 Mich. App. 660, 663; 774 N.W.2d 527 (2009); Bray v. Unified Prop. Grp., LLC, 2012 WL 5363792, at *4 (E.D. Mich. 2012); see also Helzer v. CBS Boring & Mach. Co., Inc., 1999 WL 33441300, *4 (Mich. Ct. App. June 8, 1999) (affirming dismissal of intentional interference with a prospective civil action by spoliation

of evidence claim because Michigan does not recognize such a claim). Accordingly, this is a frivolous claim and must be dismissed.

## XIX. Mr. Courser Fails to State a Claim for Civil Conspiracy (Count XVIII)

Mr. Courser also alleges that there was an overarching plan to conspire against him. "[I]t is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim . . . Accordingly, pleading requirements governing civil conspiracies are relatively strict." Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008) (internal citations omitted) (federal claim); Palmer v. Allen, No. 14-cv-12247, 2016 WL 3405872 (E.D. Mich. June 21, 2016) (addressing state civil conspiracy claim). A claim of civil conspiracy under Michigan law requires a plaintiff to prove: "(1) a concerted action; (2) by a combination of two or more persons; (3) to accomplish an unlawful purpose; (4) or a lawful purpose by unlawful means." United Rentals (N. Am.), Inc. v. Keizer, 202 F. Supp. 2d 727, 743 (W.D. Mich. 2002).

Mr. Courser fails to plead sufficient facts establishing that Mr. Saari engaged in a conspiracy. Mr. Courser makes only vague and conclusory allegations, entirely unsupported by specific factual allegations, in an attempt to implicate Mr. Saari. Throughout his voluminous Amended Complaint, Mr. Courser has made specific allegations about activities engaged in by non-parties, but can muster only conclusory statements that unnamed defendants "directed" activities or "conspired with one another" at unspecified times, in unspecified places, and to commit unspecified acts. When, as here, a plaintiff merely delineates a constellation of independent acts by different persons acting at different times and in different places, courts do not presuppose the required concerted action necessary for a viable claim of civil conspiracy. Weinstein v. Mortg. Capital Assocs., Inc., No. 2:10-cv-01551, 2011 WL 90085, at *9 (D. Nev.

Jan. 11, 2011) ("Plaintiff does not state when the conspiracy began or ended, the geographic scope of the conspiracy, which persons were involved, or any other facts supporting a meeting of the minds.  Plaintiff does not allege facts which suggest Defendants would not have acted as they did absent a conspiracy.").  Due to the pleading deficiencies, Mr. Courser's civil conspiracy claim must be dismissed.

Further, if all other claims against Mr. Saari are dismissed, then the civil conspiracy claim must be dismissed against Mr. Saari as well.  "[A] conspiracy cannot stand alone as a cause of action; there must be an underlying viable tort claim."  Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 257 Mich. App. 365, 384; 670 N.W.2d 569, 580 (2003); Ordway v. Bank of Am., N.A., No. 13-13236, 2013 WL 6163936 (E.D. Mich. Nov. 20, 2013).

## CONCLUSION

For all of these reasons, Mr. Saari respectfully requests this Court grant Mr. Saari's Motion To Dismiss with prejudice all claims asserted against him in Mr. Courser's Amended Complaint, as well as any other relief that this Court deems just and proper.

Respectfully Submitted,

EVANS LAW GROUP, P.C.


By:   /s/ Cameron J. Evans
       Cameron J. Evans (P47276)
     950 W. University Drive, Suite 200
     Rochester, MI 48307-1887
     Phone: (248) 468-1485
     Email:  cevans@evanslawgrp.com

Dated:  January 11, 2019              Attorney for Defendant Norm Saari

## <u>CERTIFICATE OF SERVICE</u>

I state that on today's date, I electronically filed the foregoing **Defendant Norm Saari's Motion To Dismiss and Brief In Support** with the Clerk of the Court using the Court's electronic filing system which will send electronic notification of such filing to all counsel of record.

<u>/s/ Julia Tibbs, Legal Assistant</u>
Evans Law Group, P.C.
950 W. University Drive, Suite 200
Rochester, MI 48307-1887
Phone: (248) 468-1665

Dated: January 11, 2019