## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TODD COURSER

     Plaintiff

v.

MICHIGAN HOUSE OF
REPRESENTATIVES; KEVIN G. COTTER,
in his official capacity and individual capacity;
TIM L. BOWLIN, in his official capacity and
individual capacity; BROCK SWARTZLE, in
his official capacity and individual capacity;
NORM SAARI, in his official capacity and
individual capacity; EDWARD McBROOM,
in his official capacity and individual capacity;
and HASSAN BEYDOUN, in his official
capacity and individual capacity.

     Defendants

Case No. 1:18-cv-00882

HON. GORDON J. QUIST

---

## ***ORAL ARGUMENT REQUESTED***

## <u>PLAINTIFF'S JOINT RESPONSE AND BRIEF IN OBJECTION TO DEFENDANTS'</u>
## <u>MOTIONS TO DISMISS</u>

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................ ii

GENERAL PREFATORY OBJECTIONS TO DEFENDANTS' MOTION AND BRIEF ............ 1

FACTS AND DISCUSSION ............................................................................ 2

LAW AND ARGUMENT ............................................................................... 2

    A.    STANDARD OF REVIEW ...................................................................... 2

        1.    Fed. R. Civ. P. 12(b)(1) ............................................................ 2

        2.    Fed. R. Civ. P. 12(b)(6) ............................................................ 3

        3.    Fed. R. Civ. P. 56 .................................................................... 3

    B.    RULE 12(B)(1); ELEVENTH AMENDMENT ............................................ 4

        1.    As to the House of Representatives and officials in their "official capacities" ................................................................ 5

        2.    As to the officials in their "individual capacities" ..................... 8

        3.    Defendant Saari does not make an Eleventh Amendment argument ............................................................................... 10

    C.    RULE 12(B)(6); FAILURE TO STATE A CLAIM ....................................... 10

        1.    Statute of limitations (as to Defendant Saari) ............................ 10

        2.    Statute of limitations (as to House Defendants) ......................... 12

        3.    Vicarious liability .................................................................. 12

        4.    Legislative immunity .............................................................. 13

        5.    Tort claims, Counts 7, 9-11, 14 and 17 ...................................... 14

        6.    Qualified immunity ................................................................. 15

        7.    Count 18; Conspiracy of Concert of Actions .............................. 16

        8.    Count 1; 42 U.S.C. § 1983 (procedural due process) ................... 16

        9.    Count 1; 42 U.S.C. § 1983 (substantive due process) .................. 18

10.    Count 1; 42 U.S.C. § 1983 (Equal Protection rights) ...............................19

11.    Count 1; 42 U.S.C. § 1983 (Fourth Amendment)....................................20

12.    Count 2; 42 U.S.C. § 1985 (Conspiracy to violate § 1983)......................21

13.    Count 3; Unconstitutional Vagueness.......................................................22

14.    Count 4; Fair and Just Treatment Clause .................................................24

15.    Count 5; Federal Wiretapping or Michigan's Eavesdropping
Statute .......................................................................................................25

16.    Count 6; 18 U.S.C. 1030 and MCL 752.791 ............................................26

17.    Count 7; Libel, Slander, and Defamation .................................................27

18.    Count 8; Civil Stalking .............................................................................30

19.    Count 9; Invasion of Privacy ....................................................................31

20.    Count 10; Tortious Interference with Business Relationships..................31

21.    Counts 11; Intentional Infliction of Emotional Distress..........................31

22.    Count 12; Negligent Infliction of Emotional Distress .............................32

23.    Count 13; Indemnification ........................................................................33

24.    Count 14; Fraudulent Misrepresentation ..................................................34

25.    Count 15; RICO ........................................................................................35

26.    Count 16; Conspiracy to Violate RICO ...................................................36

27.    Count 17; Spoliation .................................................................................36

CONCLUSION...................................................................................................37

CERTIFICATE OF SERVICE ...........................................................................38

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                                       Page

*Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)..............................4

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). ................................................................16

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) .......................................................3

*Bartell v. Lohiser*, 215 F.3d 550 (6th Cir. 2000) ...............................................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................

*Bowers v. City of Flint*, 325 F.3d 758 (6th Cir. 2003) ...............................................18

*Cardinal v Metrish*, 564 F.3d 794 (6th Cir. 2009)........................................................9

*CenTra, Inc. v. Estrin,* 538 F.3d 402 (6th Cir.2008)......................................................1

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ...........................................3

*Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) .......................3

*Fitzke v. Shappell*, 408 F.2d 1072 (6th Cir. 1972)..........................................................4

*General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095 (6th Cir.1994) .......................4

*Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007)................................2

*Golden v. Gorno Bros., Inc.*, 410 F.3d 879 (6th Cir. 2005)...............................................2

*Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425 (6th Cir. 2012) .........................................3

*Hafer v. Melo*, 502 U.S. 21 (1991) ......................................................................9

*Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010)...............................................2

*Harlow v Fitzgerald*, 457 U.S. 800, 818 (1982) ...................................................15

*Hess v. Port Authority Trans-Hudson Corp.*, 115 S. Ct. 394 (1994)...............................................8

*Hutchinson v Proxmire*, 443 US 111 (1979) ...................................................13

*In re Thompson*, 162 B.R. 748, 772 (E.D.Mich., 1993) ...............................................28

*Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006)...............................................3

*Leach v Shelby County Sheriff*, 891 F.2d 1241 (6th Cir. 1989)...............................................8

*Martin v Wood*, 772 F.3d 192 (4th Cir. 2014) ...............................................................9

*Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494 (6th Cir. 2006).....................1

*Mezibov v Allen*, 411 F.3d 712 (6th Cir. 2005)..............................................................3

*Moor v. County of Alameda*, 411 U.S. 693 (1973) .........................................................8

*Mullins v Cyranek*, 805 F.3d 760 (6th Cir. 2015)...........................................................16

*Pinkerton v United States*, 328 US 640 (1946)..............................................................20

*Rose v Locke*, 423 U.S. 48, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975).......................................23

*Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)...........................35

*Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) .............................................................9

*United States v Caporale*, 806 F.2d 1487 (11th Cir. 1986) .............................................35

*United States v Corrado*, 227 F.3d 543 (6th Cir. 2000) .................................................35

*United States v Errico*, 635 F. 2d 152 (2d Cir. 1980) .....................................................20

*United States v Hewes*, 729 F. 2d 1302 (11th Cir. 1984).................................................20

*United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) ................................................36

*United States v Lyons*, 870 F.Supp.2d 281 (D. Mass. 2012)  .........................................35

*United States v Riccobene*, 709 F. 2d 214 (3d Cir. 1983)................................................20

*United States v Simmons*, 154 F.3d 765 (8th Cir. 1998)................................................35

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940)......................................36

*United States v Weinstein*, 762 F. 2d 1522 (11th Cir. 1985) .........................................20

*Village of Willowbrook v Olech*, 528 U.S. 562; 120 S. Ct. 1073 (2000).......................................19

*Whitener v. McWatters*, 112 F.3d 740 (4th Cir. 1997) .................................................14

## MICHIGAN CASES

*Bahr v Miller Bros Creamery*, 365 Mich 415, 112 NW2d 463 (1961) .........................................20

*Bauer v Michigan House of Representatives*, November 27, 2018 (Docket No. 18-000144).......24

*Bergen v Baker*, 264 Mich App 376; 691 NW2d 770 (2004)........................................34

*Brown v Brown,* 338 Mich 492; 61 NW2d 656 (1953)..........................................................21, 30

*Brown v Drake-Willock International*, 209 Mich App 136; 530 NW2d 510 (1995)....................11

*Bryant v. Brannen*, 180 Mich App  87, 446 NW2d 847 (1989) .................................................12

*Burden v Elias Brothers Big Boy Restaurants*, 240 Mich App 723; 613 NW2d 378 (2000) ........27

*Case v Consumers Power Co*, 463 Mich 1; 615 NW2d 17 (2000)................................................12

*Clair v. Battle Creek Journal Co*., 168 Mich. 467, 134 N.W. 443 (1912) ...................................28

*Connelly v Paul Ruddy's Equip Repair & Service Co*, 388 Mich 146; 200 NW2d 70 (1972) ......11

*Doe v Mills*, 212 Mich App 73; 536 NW2d 824 (1995) ............................................................30

*Fisher v Detroit Free Press, Inc*, 158 Mich App 409; 404 NW2d 765 (1987) ............................27

*Horvath v Delida,* 213 Mich App 620; 540 NW2d 760 (1995)....................................................11

*Huse v East China Twp Bd*., 330 Mich 465, 47 NW2d 696 (1951)..............................................33

*Ireland v. Edwards*, 230 Mich.App. 607; 584 N.W.2d 632 (1998)..............................................27

*Lorencz v Ford Motor Co,* 439 Mich 370; 483 NW2d 844 (1992) ..............................................32

*Maiden v. Rozwood*, 461 Mich 109; 597 NW2d 817 (1999).......................................................32

*Mays v Snyder*, 232 Mich App 1; 916 NW2d 227 (2018) .................................................25

*McCormick v. Hawkins*, 169 Mich. 641, 135 N.W. 1066 (1912)................................................28

*Mino v Clio School Dist*, 255 Mich App 60; 661 NW2d 586 (2003) ..........................................31

*Mitan v Campbell*, 474 Mich 21; 706 NW2d 420 (2005)...........................................................27

*Moll v Abbott Laboratories*, 444 Mich 1, 12; 506 NW2d 816 ..................................................11

*Moning v. Alfono*, 400 Mich 425; 254 NW2d 759 (1977)..........................................................33

*Norris v State Farm Fire*, 229 Mich App 231; 581 NW2d 746 (1998).........................................12

*Odom v Wayne County*, 482 Mich 459; 760 NW2d 217 (2008)...................................................14

*Peoples v. Detroit Post & Tribune Co.*, 54 Mich. 457, 20 N.W. 528 (1884) ...............................27

*Pulver v Dundee Cement Co*, 445 Mich 68; 515 NW2d 728 (1994).............................................28

*Riddle v McLouth Steel Products Corp,* 440 Mich 85; 485 NW2d 676 (1992)............................12

*Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985).......................................32

*Rosenberg v Rosenberg Bros Special Account,* 134 Mich App 342;
    351 NW2d 563 (1984) ...............................................................................................21, 30

*Scougale v. Sweet*, 124 Mich. 311, 82 N.W. 1061 (1900) .........................................................27

*Sharp v City of Lansing*, 464 Mich 792, 629 NW2d 873 (2001)................................................34

*Sias v. General Motors Corp.*, 372 Mich. 542; 127 N.W.2d 357 (1964) ....................................27

*Simons v. Burnham*, 102 Mich. 189, 60 N.W. 476 (1894) ...........................................................28

*Slater v. Walter*, 148 Mich. 650, 112 N.W. 682 (1907)...............................................................27

*Walsh v Taylor*, 263 Mich App 618; 689 NW2d 506 (2004) .......................................................32

*Warren Consolidated Schools v WR Grace & Co*, 205 Mich App 580; 518 NW2d 508 (1994) ..11

*Warsop v Cole,* 292 Mich 628, 291 NW 33 (1940)................................................................21, 30

*Wilkerson v. Carlo*, 101 Mich.App. 629; 300 N.W.2d 658 (1980) ..............................................27

*Wilkins v Gagliardi*, 219 Mich App 260 NW2d 171 (1996) .......................................................13

*Whittemore v. Weiss*, 33 Mich. 348 (1876).................................................................................28

## UNPUBLISHED CASES

*Wilson v. Sinai Grace Hosp.*, 2004 WL 915044 (Mich. App. 2004) (unpublished per
curium opinion) (Docket No. 233425)...............................................................................37

## FEDERAL STATUTES

28 U.S.C. § 1983 .............................................................................13, 16, 17, 18, 19, 20

28 U.S.C. § 1985 .............................................................................................16, 20, 21, 32

18 U.S.C. § 1030................................................................................................10, 16, 26

## MICHIGAN STATUTES

MCL 600.2911 ..........................................................................................................27, 28

MCL 600.5827 ................................................................................................................10

MCL 691.1401 ................................................................................................................14

MCL 691.1407 ................................................................................................................14

MCL 691.1408 ..................................................................................................33

MCL 750.505 ....................................................................................................28

MCL 752.791 ....................................................................................................26

MCL 752.794 ....................................................................................................27

## RULES

Rule 12(b)(1) ..............................................................................................2, 4, 10

Rule 12(b)(6) ....................................................................1, 3, 10, 34, 35, 36

Rule 12(c) .............................................................................................................1

Rule 12(d) ...........................................................................................................1

Rule 56 ..........................................................................................1, 3, 4, 17

## OTHER CITATIONS

W. Prosser, *Handbook of the Law of Torts* §46, at 292 (4th ed 1971) .........................................21

Restatement Torts, 2d, § 46, comment d, pp 72-73 ....................................................32

This brief is filed as a joint brief in objection and opposition to two motions filed by Defendants collectively: (1) a motion to dismiss filed Michigan House of Representatives, Kevin M. Cotter, Tim L. Bowlin, Brock Swartzle, Edward McBroom, and Hassan Beydoun ("The House Defendants") (ECF No. 41-42) and (2) a motion to dismiss filed by Norm Saari (ECF No. 38). This brief is filed jointly because many of the issues are identical or significantly overlap.

## GENERAL PREFATORY OBJECTIONS
## TO DEFENDANTS' MOTION AND BRIEF

Plaintiff objects to Defendants' motions and briefs because Defendants have styled their motions and briefs in reality under Rule 56 even though they have stated they are filed under Rule 12. Defendants have attached exhibits and made arguments outside the scope of the pleadings. With respect to motions filed under Rule 12(b)(6), the following precepts apply:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(*See* Fed. R. Civ. P. 12(d)).

In addition to the foregoing, it is well established that "the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Fed. R. Civ. P. 12(c) motion to a Fed. R. Civ. P. 56 motion for summary judgment." *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503-04 (6th Cir. 2006).

Rule 56 Motions are generally disfavored prior to the expiration of discovery. "Typically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir.2008).

In the House Defendants' motion, they point to numerous items outside the pleadings. For instance, (1) they point to an August 15, 2015 police report (*Defendants' House et al Brief*, at 17, fn 14) (ECF No. 41, PageID.2326); (2) they reference testimony before the House Select Committee (*Id.*, at 16); (3) they direct to court to a video on the house.mi.gov website (*Id.*, at 19, fn 16); (4) they direct the Court to the full HBO Report (*Id.*, at 34)[1]; (4) they refer the Court to the Select Committee Minutes (*Id.*, at 35).

In Defendant Saar's brief (ECF No. 40, PageID.2294), (1) he includes reference to a press release (*Defendant Saari's Brief*, at 15, and (2) he attaches 5 exhibits.

## FACTS AND DISCUSSION

Plaintiff, TODD COURSER, relies on the facts averred by himself in Plaintiff's First Amended Complaint and Demand for Jury Trial filed against

## LAW AND ARGUMENT

A.   STANDARD OF REVIEW

1.   Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). Put differently, a motion to dismiss pursuant to Rule 12(b)(1) attacks a plaintiff's right to be in a particular court. *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 619, n. 3 (6th Cir. 2010) (citation omitted). This matter is before the Court on a facial attack. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) ("[a] facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading."). "When reviewing a facial attack, a district court takes the allegations in the

---

[1] Notably, the Defendants refer the Court to paragraph 195 of the First Amended Complaint as the source of the HBO Report. It is not.

complaint as true . . . If those allegations establish federal claims, jurisdiction exists." *Id.* However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Mezibov v Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### 2. __Fed. R. Civ. P. 12(b)(6)__

In reviewing a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). A plaintiff will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). The complaint must thus "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

In analyzing the sufficiency and plausibility of the claim, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The 6th Circuit will affirm a district court's dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Homeland Sec.*, 679 F.3d 425, 429 (6th Cir. 2012) (citation and internal quotation marks omitted).

### 3. __Fed. R. Civ. P. 56__

Based on his prefatory objections above, Plaintiff asserts that the proper standard if review should be based on Fed. R. Civ. P. 56. Summary judgment is proper only if there is no

3

genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Moreover, the Court must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir.1994).

Under Fed. R. Civ. P. 56(c) the moving party always has the initial burden of showing the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Adickes v. Kress & Co.*, 398 U.S. 144, 159-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See generally* 6 Moore P 56.15(3).

If, and only if, the initial burden has been supported by additional materials, the non-moving party must then come forward with specific facts which demonstrate to the court that there is a genuine issue for trial. In this case, the ultimate burden of proving the propriety of summary judgment remains on the moving party. *See Adickes*, *supra* at 159-60, 90 S.Ct. 1598; *Fitzke v. Shappell*, 408 F.2d 1072 (6th Cir. 1972). As the Supreme Court observed in *Adickes*, the Advisory Committee on the 1963 Amendments to Fed. R. Civ. P. 56 expressly rejected the idea that subdivision (e) altered the ordinary standards of proof in a motion for summary judgment: "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." 398 U.S. at 160, 90 S.Ct. at 1610, quoting Advisory Committee Notes on 1963 Amendment to Fed. R. Civ. P. 56.

## B.    RULE 12(B)(1); ELEVENTH AMENDMENT

Defendants argue that all claims against all Defendants should be dismissed on the theory that this Court lacks jurisdiction based on the Eleventh Amendment.

4

1.    __As to the House of Representatives and officials in their "official capacities"__

The Republicans and Democrats are separate private organizations and are not part of the government. Yes the House has allowed the political parties to be exempt from the open meetings act. The House has allowed the caucuses to operate on state grounds for their caucus meetings and use secret agreements as to how their governmental power will be handled in violation of their official duties and responsibilities as representatives. The House has allowed the caucuses to use state employees to handle and conduct their caucus meetings, which are political in nature and controlled by the political parties. The House has allowed the Speaker of the House to demand each member sign a secret caucus pledge and restrict the agreement from being revealed to the public. This caucus pledge requires the members to submit to political party rule. Each member of the select committee was under caucus agreement to vote as required by the speaker. The House allowed the caucus and speaker to use his political position in violation of state law to force seating arrangements under Defendant Saari's and Defendant Cotter's control. The House allowed the caucus and speaker to use a political arrangement to dictate the terms of due process in violation of their established due process procedures for removing a state representative. It wasn't the House that was doing this; it was really the Republican Party conducting this hearing in a partisan fashion; all subject to the caucus pledge. In doing so, the House allowed the Republican Party to slant the committee in its favor to avoid due process. Then the House allowed the caucus and speaker to keep subpoena power to itself; or put another way, prevent the Democrats or the accused (Plaintiff) from having subpoena power. This allowed the caucus and speaker (as Republicans) to deny Plaintiff rights to fair and just treatment. This also allowed the caucus and speaker (as Republicans) to make Plaintiff a spectator at his own removal hearing. He couldn't ask questions or cross-examine witnesses or even call witnesses. This violated his due process. Even Defendant Cotter stated that he didn't

5

care how we got there, as long as those two are no longer members. This demonstrates a extreme malice and violation of due process. In fact, allowing the political party to take over the chamber is a complete violation of due process.

In addition to the above, to demonstrate this, we only need to look to a quote from Defendant Cotter and two pages of the texts:

- COTTER stated after COURSER and Bauer were removed from office, "To me, it didn't make a difference how we got the result of both of these members no longer being a member of the body." *First Amended Complaint*, at ¶238 and Exhibit 68.

- In the text messages, Keith Allard tells Don Goris (August 24, 2015) that Defendant Cotter is whitewashing the investigation. *First Amended Complaint*, Ex. 2, page 133-134:

```
Don Goris:      Any speculation what the HBO statement
                will say?

Keith Allard:   I've heard through the grapevine that it
                will recommend criminal charges for both
                but who really knows at this point.

                I know our testimony and evidence is
                extremely damning. And the Speaker is
                going to have to spend some time
                whitewashing his role before anything is
                publicly released.

Don Goris:      Nice.

Keith Allard:   I've heard they have very few allies in
                the house and that if it came to a vote
                to expel them they'd be toast.

                They don't have a single ally. Even Gary
                Glenn and Tom Hooker hate them. And that
                was true even before this happened.

                Rumor is they want them out before
                Mackinac so they're not taking pics with
                Presidential candidates and getting on
                national media.
```

6

- These "whitewashing" comments continued in the texts between Ben Graham and Keith Allard (September 1, 2015). *First Amended Complaint*, Ex. 5, page 154:

```
Keith Allard: Matt Golden KNEW Todd sent that e-mail,
              and told Cody and JJ it was a fireable
              offense to ever discuss it.

              and Golden KNEW about the Raddison and
              was just trying to track down a police
              report.

              So the Speaker's deputy chief of staff
              knew ALL of this affair stuff and was
              actively trying to cover it up.

Ben Graham:   Yep. Josh didn't tell bowlin because he
              didn't want to get JJ rich etc in
              trouble.

Keith Allard: Oh come on.

              They didn't even focus on that stuff with
              us at all.

Ben Graham:   Yep. They just wanted us to tell them
              what we have so they could whitewash it.
```

Most likely, we all familiar with the term "whitewashing". Merriam-Webster defines it as: "to gloss over or to cover up (such as vices or crimes); to exonerate by means of a perfunctory investigation or through biased presentation of data."

These text messages show that on August 23, 2015 and September 1, 2015 – BEFORE the House Select Committee convened to judge the qualifications of Plaintiff – that Kevin Cotter (the then Speaker of the House) was "whitewashing" his role. It was also known that Matthew Golden (the then Deputy Chief of Staff to Kevin Cotter) knew about the surveillance at the Radisson, knew about the affair, and was covering it up. It was known that the House was "whitewashing" the investigation and was only performing a perfunctory investigation through a biased presentation of date. Yet, this was never disclosed to anyone else. It was kept hidden in these text messages until Plaintiff was finally able to discover it through a subpoena in a criminal

7

case in May 2018. These two pages alone demonstrate the depth of Defendants' involvement and knowledge of a cover-up, surveillance, illegal conduct, and presentation of data in a false light.

This information demonstrates that the House had abrogated its responsibility to govern to a political party that "didn't care how" it removed Plaintiff, as long as it was done; and that in doing so, Defendants would "whitewash" the investigation. The Eleventh Amendment does not automatically protect political subdivisions of the state from liability. *Moor v. County of Alameda*, 411 U.S. 693 (1973). The main factor is whether the damages would come out of the state treasury. *Hess v. Port Authority Trans-Hudson Corp.*, 115 S. Ct. 394 (1994). If the state would have to pay for damages from the state treasury, then the Eleventh Amendment will serve as a shield from liability. However, certain factors must be weighed: for instance, the amount of state control and how state law defines the subdivision, although the Supreme Court has never issued a comprehensive guideline. Eleventh Amendment immunity does not protect political parties.

We don't know if the state would pay for the liability of these actions once the true extent of their involvement is revealed. That is an issue for discovery. It is too soon to tell if the Eleventh Amendment applies. Plus, a factor to weigh is whether the House allowed a political party to take over the government function. If that happened, then the House was no longer operating as an arm of the state; but was instead acting as a private, political party, not subject to the Eleventh Amendment. Discovery is needed on this issue.

2.    **As to the officials in their "individual capacities"**

Plaintiff has alleged that the individual defendants were involved personally in the occurrences at issue in this case or had personal knowledge of the circumstances surrounding those issues. Officials can be personally liable for damages for their own unconstitutional behavior. *Leach v Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Likewise,

8

officials are personally liable when they encouraged the specific incidents or misconduct or in some way participated in it. *Cardinal v Metrish*, 564 F.3d 794, 804 (6th Cir. 2009). "At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). In this case, Plaintiff has alleged direct, personal involvement of the part of the individual defendants. Plaintiff has alleged that adverse actions taken against him were authorized, approved, or knowingly acquiesced by the individual defendants. See e.g. *First Amended Complaint* at ¶¶23, 24, 34, 35. Further, individuals may remain personally liable even if their acts are of an official nature. *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

The Defendants cite *Martin v Wood*, 772 F.3d 192 (4th Cir. 2014) to support their position that claims against official in their individual capacity are barred. The Defendants request that this Court adopt the *Martin* test. If this Court were to do so, it must conclude that the claims against the individual defendants will survive.

> (1) were the allegedy unlawful actions of the state officials "tied inextricably to their official duties";
>
> - In order to rule in favor of the Defendants, this Court must conclude that criminal acts as set forth in the First Amended Complaint are part of the Defendants' official duties. See e.g. *First Amended Complaint* at ¶¶23, 24, 34, 35.
>
> (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State;
>
> - See above. In order to rule in favor of the Defendants, this Court must conclude that criminal acts as set forth in the First Amended Complaint are part of the Defendants' official duties.
>
> (3) would a judgment against the state officials be "institutional and official in character" such that if would operate against the State.

9

- It would not, and no doubt the State would not accept such judgment against it based on the illegal conduct of the individual Defendants. They may have "coverage" at this point from the State defending them, but no doubt they do not have "coverage" from liability.

(4) were the actions of the state officials taken to further personal interest distinct from the State's interests;

- The answer is emphatically, yes.

(5) were the state officials' actions ultra vires

- The answer is emphatically, yes. The question is whether the individual Defendants had the legal power or authority to commit criminal acts and engage in a conspiracy to remove a member from the legislature. Of course not. This means that the individual Defendants acted beyond their legal power or authority.

Accordingly, Plaintiff's claims against the individual defendants must survived at Rule 12(b)(1) challenge.

### 3. Defendant Saari does not make an Eleventh Amendment argument

Defendant Norm Saari does not make an Eleventh Amendment argument, therefore this section does not relate to his arguments.

## C. RULE 12(B)(6); FAILURE TO STATE A CLAIM

### 1. Statute of limitations (as to Defendant Saari)

Defendant Saari has advanced an argument regarding the statute of limitations as to wiretapping (18 U.S.C. § 2520), slander, and computer fraud (18 U.S.C. § 1030). These are the only arguments advanced regarding the statute of limitations:

MCL 600.5827 provides that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." However, the appropriate application of this statute is called into question when there is a lengthy period between the tortious conduct and the resultant damage; or when there is a delay between the damage and the 'plaintiff's discovery of a causal connection between the 'defendant's conduct and the damage.

10

The Michigan Supreme Court has held that "the term 'wrong,'" as used in the accrual statute, specified the date on which the 'defendant's breach harmed the plaintiff, as opposed to the date on which the defendant breached his duty." *Moll v Abbott Laboratories*, 444 Mich 1, 12; 506 NW2d 816 (citing *Connelly v Paul Ruddy's Equip Repair & Service Co*, 388 Mich 146; 200 NW2d 70 (1972)); *Horvath v Delida,* 213 Mich App 620, 624; 540 NW2d 760 (1995). This interpretation avoids the absurd result of the statute of limitations running before the plaintiff knows that he is injured. *Moll*, at 12. Under this rule, a 'plaintiff's cause of action accrues when all the elements of the claim have occurred and can be alleged in a complaint. *Moll*, 15; *Horvath*, 624.

Our Supreme Court has also adopted the discovery rule to avoid premature barring of a plaintiff's cause of action. *Moll,* 12. Under the discovery rule, a plaintiff's claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the injury and the causal connection between the plaintiff's injury and the defendant's breach. *Id.,* 16. It is not necessary that a plaintiff be able to prove each element of the cause of action before the statute of limitations begins to run. *Warren Consolidated Schools v WR Grace & Co*, 205 Mich App 580, 583; 518 NW2d 508 (1994). Further, a plaintiff need not be aware of the identity of the person causing the injury. *Brown v Drake-Willock International*, 209 Mich App 136, 142; 530 NW2d 510 (1995). The discovery rule applies to the discovery of a specific injury, not to the discovery of the identities of all the possible parties. *Id.*

Here, Plaintiff did not gain access to the May 19, 2015 audio files until May 1, 2018. See Exhibit 83. Only then was Plaintiff able to analyze the recording, audio files, and text messages to learn the fraudulent nature of the recordings. See Exhibits 7 (Ed Primeau Affidavit) and Exhibit 8 (Ed Primeau Report). See also *First Amended Complaint*, ¶31-32, 123-125. Therefore, Plaintiff did not know that the recording had been edited, modified, and fabricated until May, 1,

11

2018, tolling the statute of limitation until May 1, 2019. This complaint was filed within the required period of time.

### 2.      <u>Statute of limitations (as to House Defendants)</u>

The only argument advanced by the House Defendants is to Count 7 (slander and defamation). The arguments above apply equally to the House Defendants.

### 3.      <u>Vicarious liability</u>

"Under Michigan law, the control test is used to determine the existence of an employer-employee relationship in claims alleging respondeat superior. *Norris v State Farm Fire*, 229 Mich App 231; 581 NW2d 746 (1998). In this case, certain employee co-conspirators were either directed to engage in criminal activity (such as surveillance, wiretapping, eavesdropping, stalking, extortion, and other computer related crimes or torts) or they were acting on their own. Based on the record, that is a genuine issue of material fact that needs to be resolved during discovery. "While the issue of whether the employee was acting within the scope of his employement is generally for the trier of fact, the issue may be decided as a matter of law where it is clear that the employee was acting to accomplish some purpose of his own." *Bryant v. Brannen*, 180 Mich App 87, 98, 446 NW2d 847 (1989). The Defendants degree of culpability is a matter for the trier of fact. *Case v Consumers Power Co*, 463 Mich 1, 7; 615 NW2d 17 (2000); *Riddle v McLouth Steel Products Corp,* 440 Mich 85, 96; 485 NW2d 676 (1992).

In addition and most importantly, even if the employees' conduct was reckless, such conduct is not conclusive regarding whether the employees were acting outside the scope of their employment at the time they engaged in the conduct described in the complaint. The issue still remains whether the agent was engaged in his master's business at the time of the accident and whether the principal had the right of control of the agent. Further, all Defendants are part of an

12

alleged conspiracy. Once the conspiracy starts, a member who leaves the conspiracy is still liable for the wrongs committed by the entire group through the end of the conspiracy.[2]

### 4. <u>Legislative immunity</u>

Under article 4, Section 11 of the Michigan Constitution, the Speech or Debate Clause, "state legislators enjoy a broad-based immunity for the enactment of legislation and for other acts committed within the sphere of legislative activity." *Wilkins v Gagliardi*, 219 Mich App 260, 267-268; 556 NW2d 171 (1996) (citation omitted). The United States Supreme Court has held that the Speech or Debate Clause applies in two situations: either (1) the speech must "be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation" or (2) the speech must be "with respect to other matters which the Constitution places within the jurisdiction of either House". *Hutchinson v Proxmire*, 443 US 111, 126-27 (1979).

In this case, the question that must be answered is whether the Defendants actions "fall within the legislative sphere." Engaging in criminal conduct is not an action that is based on a legislative act. For example:

- The Defendants conduct was not part of the legislative sphere. See for example, *First Amended Complaint* ¶¶25-32, 49-56, 57-58, 62, 66. See also ¶¶58-60 as to Defendant Saari's efforts to have employees keep him posted on Plaintiff and asking for reports.

- The Defendants conduct was not within the jurisdiction of the House. See *Id.* ¶¶25-32, 49-56, 57-58, 62, 66. See also ¶¶58-60 as to Defendant Saari's efforts to have employees keep him posted on Plaintiff and asking for reports.

Asking employees to follow a Representative, take photographs, conduct surveillance, conduct wiretapping and eavesdropping, and engage in a conspiracy to remove a legislator through

---

[2] See Section 10. Count 1; 42 U.S.C. § 1983 (Fourth Amendment)) *supra*

13

extortion is not with the "legislative sphere". Then using that information (obtained illegally) in a so-called investigation through the select committee hearings and expulsion are also not within the legislative sphere. One cannot create the circumstances which give rise to the select committee though illegal means and then claim they are fulfilling their legislative roles by conducting hearing; while at the same time keeping information hidden or covering up their own illegal conduct. For instance, Defendant Cotter stating that "it didn't make a difference how we got the result of both of these members no longer being a member of the body." *First Amended Complaint*, at ¶238 and Exhibit 68. Or Allard and Graham acknowledging the Defendant Cotter was whitewashing the investigation. *First Amended Complaint*, Ex. 2, page 133-134 and Ex. 5, page 154. It is for this reason that the Court in *Whitener v. McWatters*, 112 F.3d 740 (4th Cir. 1997) stated that actions of self-policing could be actionable in "exceptional circumstance". *Id*. at 744. This is one of those circumstances.

## 5. Tort claims, Counts 7, 9-11, 14 and 17

Defendants argue that they are equally immune under Michigan's Governmental Tort Liability Act, 1964 PA 170, MCL 691.1401, *et seq*. However, this only protects a government officer who is "acting within the scope of his or her . . . legislative authority." See MCL 691.1407(5).

Defendants cite the standard test set forth in *Odom v Wayne County*, 482 Mich 459; 760 NW2d 217 (2008) to support their position. In fact, *Odom* significantly cuts against Defendants position. Government employees are entitled to immunity for intentional tort claims if their acts were (a) "undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority"; (b) "undertaken in good faith, or were not undertaken with malice"; and (c) "discretionary, as opposed to ministerial." *Id.* at 228. "Ministerial acts constitute merely an obedience to orders or the

14

performance of a duty in which the individual has little or no choice." *Id*. at 226. (quotation marks omitted). "Discretionary acts require personal deliberation, decision and judgment." *Id*. (quotation marks omitted). Additionally, acts are undertaken in good faith when they do not amount to "willful and corrupt misconduct" or involve "malicious intent, capricious action or corrupt conduct." *Id*. at 225.

In this case, the Defendants entire process violates the *Odom* principles and they are not entitled to immunity under Michigan's Governmental Tort Liability Act. For example:

- The Defendants actions were not within the scope of their authority because the scope of their authority does not include criminal activity.

- The Defendants actions were not undertaken in good faith.

- The Defendants actions were taken with malice.

- The Defendants actions were clearly "willful and corrupt misconduct".

- The Defendants actions clearly involved "malicious intent, capricious action or corrupt conduct."

- To support each of these, see *First Amended Complaint*, at ¶¶ 81(a)-(j), 82(a)-(d), 86(a)-(e), 87(a)-(k), 88(a)-(l), 89 (lying to police), 90 (acted in concert), 91 (lied about wiretapping), 92-94 (perjury), 96 (acted in concert to place listening devices), 97 (illegally accessing hotel room), 102(a)-(f), 103(a)-(c), 104-105, 106(a)-(f), 107-115 (illegal surveillance, wiretapping, conspiracy), 116-120 (clear coordination and conspiracy).

6.    **Qualified immunity**

The Defendants are not entitled to qualified immunity when their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v Fitzgerald*, 457 U.S. 800, 818 (1982). In this case, the facts set forth in the First Amended Complaint, taken in the light most favorable to Plaintiff show that the Defendants' conduct violated a constitutional right. Further, the Defendants, as reasonable

15

officials, would have understood that what they were doing was wrong. See *Mullins v Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015).

In this case, Plaintiff has pled facts demonstrating that his constitutional or statutory rights have been violated:

- 42 U.S.C. § 1983 (Count 1). See *First Amended Complaint* ¶¶ 23-25, 88-286.

- 42 U.S.C. § 1985 (Count 2). See *Id.* ¶¶287-301

- 18 U.S.C. § 1030 (Count 6). See *Id.* ¶¶431-444.

- RICO claims (Counts 15 and 16). See *Id.* ¶¶580-653.

Second, each Defendant should have understood that what he was doing was wrong. See *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

### 7.    <u>Count 18; Conspiracy of Concert of Actions</u>

The Defendants argue that the conspiracy claim is not pled with specificity. This is not accurate and is nothing more than boilerplate defense pleading. If any complaint sets forth specific facts of a conspiracy, it is this one. At the same time, the Defendants themselves make reference to the paragraphs of Plaintiff's First Amended Complaint that involve conspiracy. Indeed, the Defendants references paragraphs 24, 33-34, 61, 82-83, 88, 96, 102-121, 126-127, 141, 149, 156, 172-176, 182-185, 258, 265-268, 271, 289-294, 322, 407-408, 424, 434, 440, 459, 477, 488-490, 500, 508, 516, 523, 527-528, 551, 587, 593, 647, 657, 661, 667-671. Plaintiff's claim for conspiracy is well pled and with specific allegations. Therefore, Plaintiff's claim for conspiracy must survive.

### 8.    <u>Count 1; 42 U.S.C. § 1983 (procedural due process)</u>

Next, Defendants argue that the Plaintiff's 1983 claim "fails to allege a shred of evidence showing that the House Defendants personally surveilled or ordered others to surveil Courser."

16

This is not accurate. Defendants claim that Plaintiff's complaint is not "factual". This is also not accurate. Defendants claim that "the public record directly contradicts Courser's complaint and demonstrates that he was afforded a full public process." First, what "public record"? Second, referencing the "full public record" takes this out of Rule 12(b) and puts into Rule 56. Third, Plaintiff was most definitely not afforded a full public process. The select committee members were handpicked by Defendant Cotter. *First Amended Complaint*, at ¶205. These were the same members who had already pledged their vote to Cotter, so there was no independence. *Id.*, at ¶207. Plaintiff was not allowed to call witnesses, question, or cross-examine witnesses. *Id.*, at ¶206. Plaintiff was not allowed a copy of any evidence in advance of the hearing. *Id.*, at ¶208. Allard and Graham were not subpoenaed to testify. *Id.*, at ¶209-212. The Committee did not present the testimony of Anne Hill or Karen Couture because they contradicted Allard and Graham. *Id.*, at ¶213. Certain Democrats questioned the process, lack of witnesses, lack of subpoenas, lack of due process, and lack of substantial evidence on the record. *Id.*, at ¶214. The minutes of the Select Committee contain admitted omissions. *Id.*, at ¶215. Clearly, Plaintiff was not afforded a full public process. See also *Id.* at 342-344, fn 13-15.

Next, Defendants incorrectly claim that Plaintiff fails to explain how he was deprived of liberty. To the contrary, Plaintiff specifically details the deprivation of liberty in the First Amended Complaint at ¶264-286 and 314-405.

Finally, Defendants attempt to argue that Plaintiff is not entitled to bring claims under § 1983 because he voluntarily resigned. This is not true. Plaintiff specifically alleges that he was constructively expelled. See First Amended Complaint at ¶268, 320, 322, 372, 399, 577, and 642.

DePerno Law Office, PLLC ● 951 W. Milham Avenue, PO Box 1595 ● Portage, MI 49081
(269) 321-5064 (phone) ● (269) 353-2726 (Fax)

9.     **Count 1; 42 U.S.C. § 1983 (substantive due process)**

Again, Defendants argue that Plaintiff has not pled specific facts. This is not true. The First Amended Complaint is littered with specific facts. Defendants then argue that the First Amended Complaint does not "shock the conscious" test set forth in *Bowers v. City of Flint*, 325 F.3d 758, 767 (6th Cir. 2003). If this compliant doesn't, then none would. The following are specific allegations that "shock the conscious": *First Amended Complaint*, 82(a)-(d), 86(a)-(e), 87(a)-(k), 88(a)-(l), 102(a)-(f), 103-119, 121, 127,

- ¶81(a)-(j) (Defendants provided access to passwords for electronic accounts and directed employees to use this information for criminal purposes)

- ¶82(a)-(d) (Defendants first order of business was to "get COURSER impeached")

- ¶86(a)-(e) (access to Plaintiff's email accounts continued after Cline was no longer an employee)

- ¶87(a)-(k) (access to Plaintiff's computers continued after Cline was no longer an employee)

- ¶88(a)-(l) (Defendants engaged in illegal wiretapping and eavesdropping)

- ¶102(a)-(f) (Defendants accessed Plaintiff's personal emails between himself and his mother regarding marital problems and forwarded them to others)

- ¶103-105 (Wiretapping violations)

- ¶106 (hiding criminal conduct from investigators by bringing second phone and also coordinating wiretapping with others in criminal conspiracy)

- ¶107-115 (continued criminal conspiracy)

- ¶116 (acknowledging surveillance by stating "Gonna blow my cover")

- ¶117 (illegal surveillance)

- ¶118 (coordinating extortion)

18

- ¶119 (using a listening device to listen to conversations they were not a party to and then broadcasting that information)

- ¶121 (repeated wiretapping)

- ¶127 (acknowledgment that the recording put forward and used in the select committee hearing was edited; acknowledged in live-streaming texts one after the other)

- ¶168 (provided personal information from their illegal access of emails, voicemails, and text messages and use of that information in an effort to force Plaintiff to resign)

- ¶169 (Defendant Swartlze as chief of staff and chief legal counsel acknowledges that the witnesses put forth to support the select committee had no credibility; yet used edited recording against Plaintiff without authenticating it)

- ¶170 (After using Allard and Graham as their key witnesses against Plaintiff, Defendant Swartzle acknowledges privately that "Keith Allard is just a piece of crap")

- ¶171 (The Speaker of the House acknowledges that Allard and Graham were involved in the extortion plot to remove Plaintiff from office; yet only a few weeks before, used Allard and Graham as key witnesses against Plaintiff)

- ¶173 (House investigator said of Allard and Graham that they are "f'ing liars"; yet used Allard and Graham as key witnesses; didn't disclose this publicly during select committee hearings)

### 10.    <u>Count 1; 42 U.S.C. § 1983 (Equal Protection rights)</u>

Defendants argue that Plaintiff (as a State Representative) is not a protected class. To the contrary, he is. In *Village of Willowbrook v Olech*, 528 U.S. 562; 120 S. Ct. 1073 (2000), the United States Supreme Court allowed and endorsed the "class of one" theory. The Supreme Court held that individual mistreatment by local government officials could be challenged under the federal constitution regardless of the motivation behind the conduct. *Id.* at 564-565. Henceforth, a plaintiff who wishes to proceed in federal court under the Equal Protection Clause need only allege that a government official has acted arbitrarily or irrationally, and has treated

19

the plaintiff less favorably than those similarly situated. *Id.* Plaintiff has done so. See *First Amended Complaint*, at ¶185, 278, 300, and 399.

11.  <u>**Count 1; 42 U.S.C. § 1983 (Fourth Amendment)**</u>

Defendants argue that Plaintiff has not alleged that these Defendants "themselves illegally and unlawfully recorded conversations." It doesn't matter if these Defendants pressed the record button. What is important is that these Defendants "directed" others to do so. See *First Amended Complaint*, at ¶23-24, 81-82, 87-88, 101, 180, 192-194, 407, 413, 420, 430, 443, 486, 496, 510, 520, 525, 549, 658.

The bedrock principle of conspiracy liability is that conspirators are legally responsible for each other's foreseeable actions in furtherance of their common plan. See *Pinkerton v United States*, 328 US 640 (1946)). Liability for participation in a RICO enterprise does not require "participation of all members throughout the life of the enterprise." *United States v Weinstein*, 762 F. 2d 1522, 1537 (11th Cir. 1985). "The law does not require all members of the RICO enterprise to have maintained their association with it throughout the enterprise's life." *United States v Hewes*, 729 F. 2d 1302, 1317 (11th Cir. 1984). That "the various associate function as a continuing unit" "does not mean that individuals cannot leave the group or that new members cannot join at a later time." *United States v Riccobene*, 709 F. 2d 214, 223 (3d Cir. 1983). Membership in an enterprise may change over time. *United States v Errico*, 635 F. 2d 152, 155 (2d Cir. 1980).

A civil conspiracy is, at its root, "an agreement, or preconceived plan, to do an unlawful act." *Bahr v Miller Bros Creamery*, 365 Mich 415, 427, 112 NW2d 463 (1961). In Michigan, "All those who, in pursuance of a common plan to commit a tortious act, actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with the wrongdoer."

20

*Rosenberg v Rosenberg Bros Special Account,* 134 Mich App 342, 354; 351 NW2d 563 (1984) (quoting W. Prosser, *Handbook of the Law of Torts* §46, at 292 (4th ed 1971)). "Whatever was done in pursuance of it by one of the conspirators is to be considered as the act of all, and all are liable irrespective of the fact they did not actively participate therein." *Brown v Brown,* 338 Mich 492, 503, 61 NW2d 656 (1953) (quoting *Warsop v Cole,* 292 Mich 628, 291 NW 33 (1940)), *cert denied,* 348 US 816 (1954).

When Defendants directed others to record conversations, follow and stalk Plaintiff, extort Plaintiff, and engage in other criminal acts, they engaged in the conspiracy to violate Plaintiff's constitutional and statutory rights. They knew this was wrong. These Defendants didn't have to physically press the record button. Sending their minions out to do their work is sufficient. It clearly establishes a conspiracy and RICO violation and must survive this Rule 12(b) motion.

12.   **Count 2; 42 U.S.C. § 1985 (Conspiracy to violate § 1983)**

Defendants mischaracterize Plaintiff's complaint. Under 42 U.S.C. § 1985(2), a plaintiff is permitted to bring a claim that is primarily a state concern. It specifically encompasses the conspiracy to obstruct the court of justice in state courts. This is detailed throughout the course of the First Amended Complaint. See ¶¶23, 33, 241, 258, 285, 392, 425, 441-442, 535, 604, 608, 617, 654-663.

Defendants also mischaracterize the law related to 42 U.S.C. § 1985(3). Defendants misquote *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000). In *Bartell*, the court stated that "[t]o assert an actionable claim under § 1985(3), a claimant must show that: 1) the defendants conspired for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 2) the defendants committed acts that deprived the claimant of having and exercising any

21

right or privilege of a citizen of the United States." *Id.* at 559. Plaintiff only needs to show that Defendants deprived (directly or indirectly) "any person **or** class of persons" equal protection of the laws. Plaintiff has clearly done so in this First Amended Complaint.

13.    **Count 3; Unconstitutional Vagueness**

Article IV, § 16 of the Michigan Constitution allows the House of Representatives to expel a member based only on "the qualifications, elections and returns of its members". The House cannot expel a member for any reason. This isn't a "black check"; even if the House has the concurrence of two-thirds of all members and even if it records the reason in the journal. Can the House expel Muslim members? Black members? White men? Women? Gay members? Under the Defendants' argument, the answer is yes, so long as there is concurrence of two-thirds of all members and it is recorded in the journal. And seemingly, all Defendants would be immune from liability. For instance, "On this date in history, the House expelled Jane Doe because she is a black Muslim woman and two-thirds concurred." That is perfectly fine because two-thirds concurred and it was recorded in the journal. And everyone is immune.

Of course the House cannot do this – and not because it is inherently immoral – but because the precise language of Article IV, § 16 of the Michigan Constitution does not allow it. A member can only be expelled based on "the qualification, elections and returns of its members." If a member meets those qualifications and is properly elected, then Article IV, § 16 of the Michigan Constitution never allows expulsion; even if two-thirds agree and even if the reason is recorded in the journal.

This provision specifically *grants* the House the power to expel members for certain reasons. Yet miraculously, Defendants argue that this provision *limits* the powers of the House. That position in inconsistent with Defendants argument that the House has broad powers to expel members to prevent destruction of public confident in the body for any reason. Defendants'

22

argument of "limited power" is incongruent with its argument of "vast and broad power". Nowhere in Article IV, § 16 of the Michigan Constitution does the language grant the House the power to expel someone in order to promote confidence in the body. If that were the case, and if Defendants truly believed that argument, then other members would have been expelled.

For instance, was Representative Banks expelled after he forced a staff member to have sex with him as a condition of employment in the House? No. He was indemnified and the House paid his legal fees and paid to settle the claims against him. *First Amended Complaint*, at ¶559. Seemingly his conduct did not promote confidence in the body, but he was indemnified.

Was Virgil Smith expelled after he was charged criminally for firing over 2 dozen rounds from an AK-47 at his wife outside their home in their neighborhood? No. He was not removed from office. *Id*., at ¶280. Seemingly his conduct did not promote confidence in the body, but he served out his term.

The Defendants cannot have it both ways. They cannot argue on the one hand that they have broad powers to expel members, and then also argue that this is a limitation. To the contrary, Defendants' argument and application expands the language of Article IV, § 16 of the Michigan Constitution to an unworkable *grant* of power; It is an unchecked constitutional violation and overreached shrouded in the cloak of legislative immunity. That cannot stand.

The doctrine of unconstitutional vagueness imposes a "fair notice" requirement to prevent the State from holding an individual responsible for conduct which he could not reasonably understand to be proscribed. *Rose v Locke*, 423 U.S. 48, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975). When we apply this principle, Defendants make the argument for Plaintiff. Defendants argue that this provision is designed to give persons "a reasonable opportunity to know what is prohibited, so that they may act accordingly" and to prevent "impermissible delegat[ing] basis policy matters

23

to policemen, judges, and juries for" potentially subjective, arbitrary, and discriminatory applications.

Yet there is nothing in Article IV, § 16 of the Michigan Constitution that makes anyone aware of or any opportunity to "know what is prohibited, so that they may act accordingly." They can simply be expelled for any reasons so long as two-thirds agree. And that is precisely how Defendants have applied the provision. Similarly, there is nothing in Article IV, § 16 of the Michigan Constitution that gives any decision-maker the authority to remove a member for any reason other than "the qualifications, elections and returns of its members". Yet, Defendants have applied the provision in such a way that clearly delegates policy matters to decision-makers that are clearly subjective, arbitrary, and discriminatory. That violates the constitution.

This means that Article IV, § 16 of the Michigan Constitution is unconstitutional in its application because nobody could possibly have "fair notice" of what is permissible and what is not. See *Rose, supra*. It is simply, "the whim of the day".

**14.    Count 4; Fair and Just Treatment Clause**

Plaintiff has clearly set forth each requirement for a claim for violation of the Fair and Just Treatment Clause under Article I, § 17 of the Michigan Constitution. It is inconceivable that Defendants would argue otherwise.

The opinion cited and attached by Defendants (*Bauer v Michigan House of Representatives*, November 27, 2018 (Docket No. 18-000144) is not relevant or instructive because that case did not plead the level or detail or provide the substantial and relevant history set forth in this Complaint.

The Court of Claims ultimately concluded that the plaintiff in that case (Cindy Bauer) "fail[ed] to specifically identify an official policy or custom pursuant to which her constitutional rights were violated." *Opinion*, at 8. To the contrary, in this case, Plaintiff has painstakingly

24

detailed the official policy or custom. *First Amended Complaint*, at ¶238, 240-245, 252-254, 258, 277, 326. As to the remaining statement in the Court of Claims decision, they were also based on a complaint filed by that plaintiff in that case that was not nearly as detailed as the First Amended Complaint in this case.

The standard for this Court to decide is whether the First Amended Complaint states a cause of action under the Fair and Just Treatment Clause under Article I, § 17 of the Michigan Constitution – <u>in this case</u>. To decide that – based on the First Amended Complaint and taking the allegations as true – the Court must determine that (1) the state action deprived Plaintiff of a constitutional right and (2) was executed pursuant to an official custom or policy. *Mays v Snyder*, 232 Mich App 1; 916 NW2d 227 (2018). This claim must survive.

**15.**    **Count 5; Federal Wiretapping or Michigan's Eavesdropping Statute**

There is nothing deficient about Plaintiff's claim of conspiracy or Federal wiretapping or Michigan's eavesdropping statute. As is always the case, Defendants attempt to control the high ground by arguing that everything is a "concocted story". They do this because most people do not want to believe that their government is capable of the actions taken by Defendants. But the story isn't concocted. It is true. See *First Amended Complaint*, ¶¶ 66(e)-(i).

Finally, Defendants argue that there was no violation of these statutes because Ben Graham was present when he recorded numerous meetings. This argument fails for two reasons. First, the issue is not whether Ben Graham was present. The issue is whether he was directed to record. Directing a person to record a conversation violates the statutes, even if the person recording in present at the meeting. He is still being directed to record. See *First Amended Complaint*, ¶88, referencing Exhibits 33-36 (Allard says, "So I advised Ben I said, if you go, record it, record the conversation. And that happened.").

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 353-2726 (fax)

Second, during the May 19, 2015 meeting and while Ben Graham was secretly recording the meeting at the direction of Keith Allard, Cindy Gamrat called Plaintiff. Then Plaintiff and Cindy Gamrat had a conversation. Ben Graham picked up this conversation on his recording. He was not part of that conversation. That violates the statues when he recorded a discussion he was not part of.

It is important to note that the claim for wiretapping or eavesdropping is not an issue of procurement. These claims are still actionable and still survive these Rule 12(b) motions even though none of the Defendants pressed the record button. Rather, these claims are based on significant allegations support by real evidence (attached to the complaint) that demonstrate these Defendants worked in cooperation with those who did press the record button; and in some instances ordered them to obtain the recordings.

### 16.    Count 6; 18 U.S.C. 1030 and MCL 752.791

Defendants argue incorrectly that Defendants only seized items belonging to the House. This is not true. In fact, Defendants also seized Plaintiff's personal items without a warrant. *First Amended Complaint*, at ¶23(u). See also *Id*. at ¶656. Therefore, Defendants' argument fails. This is also confirmed in Exhibit 69 wherein Defendants Swartzle and Bowlin acknowledge in their written report that they seized "all hardcopy documents from the offices of Rep. Courser and Rep. Gamrat."

Defendants' argument about the statute of limitations also fails. Under § 1030(g), the action may be brought within 2 years of the date of discovery of the damage. Plaintiff only gained access to the evidence related to the computer information that comprises Count 6 on May 15, 2017. See Exhibit 71, *Dalman Affidavit*, at ¶7 ("I was able to pick up the hard drive from the MSP on May 15, 2017."). If was only after review of these hard drives that Plaintiff discovered the fraudulent access to computers. *First Amended Complaint*, at ¶434, 656.

26

Defendants' arguments regarding MCL 752.794 also fail. Indeed, Plaintiff has set forth sufficient facts regarding this claim. See *First Amended Complaint*, at ¶23(u), 23(v), 33, 87, 264, 434, 439-443, 658.

### 17. <u>Count 7; Libel, Slander, and Defamation</u>

Defendants also argue that Plaintiff has failed to properly plead defamation. That argument fails. In Michigan, libel and slander are a defamatory "statement of and concerning the plaintiff which is false in some material respect and is communicated to a third person by written or printed words and has a tendency to harm the plaintiff's reputation." *Fisher v Detroit Free Press, Inc*, 158 Mich App 409, 413; 404 NW2d 765 (1987). The elements of defamation are "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, (d) either actionability of the statement irrespective of special harm (defamation per se) or the existence of actual harm caused by the publication. *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005); *Ireland v. Edwards*, 230 Mich.App. 607, 632; 584 N.W.2d 632 (1998). *See also* MCL 600.2911.

Defamation per se exists if the communication is false and imputes a criminal offense or lack of chastity. *See* MCL 600.2911(1). In *Burden v Elias Brothers Big Boy Restaurants*, 240 Mich App 723, 727-29; 613 NW2d 378 (2000), the Court summed up the law on defamation:

> At common law, words charging the commission of a crime are defamatory per se, and hence, injury to the reputation of the person defamed is presumed to the extent that the failure to prove damages is not a ground for dismissal. *Sias v. General Motors Corp.*, 372 Mich. 542, 551, 127 N.W.2d 357 (1964); *Peoples v. Detroit Post & Tribune Co.*, 54 Mich. 457, 20 N.W. 528 (1884); *Wilkerson v. Carlo*, 101 Mich.App. 629, 632, 300 N.W.2d 658 (1980). Where defamation per se has occurred, the person defamed is entitled to recover general damages in at least a nominal amount. *Slater v. Walter*, 148 Mich. 650, 652-653, 112 N.W. 682 (1907); *Scougale v. Sweet*, 124 Mich. 311, 323, 325, 82 N.W. 1061 (1900); *Sias, supra* at 551-552, 127 N.W.2d 357. Where the defamatory publication is "maliciously published," the person defamed may recover "substantial damages"

27

even where no special damages could be shown. *Whittemore v. Weiss*, 33 Mich. 348, 353 (1876). Whether nominal or substantial, where there is defamation per se, the presumption of general damages is well settled. *McCormick v. Hawkins*, 169 Mich. 641, 650, 135 N.W. 1066 (1912); *Clair v. Battle Creek Journal Co*., 168 Mich. 467, 473-474, 134 N.W. 443 (1912); *Simons v. Burnham*, 102 Mich. 189, 204, 60 N.W. 476 (1894); *In re Thompson*, 162 B.R. 748, 772 (E.D.Mich., 1993).

MCL 600.2911(1); MSA 27A.2911(1) is the codification of the common-law principle that words imputing a lack of chastity or the commission of a crime constitute defamation per se and are actionable even in the absence of an ability to prove actual or special damages, as evidenced by the statute's indication that such words are "actionable in themselves...." The word "actionable," when used at common law in conjunction with a claim of defamation per se, means that the person defamed may bring a civil action and receive at least nominal damages in the absence of any proof of actual or special damages. *See, e.g., Sias, supra* at 551-552; *Peoples, supra; Wilkerson, supra* at 632. This meaning ascribed to the word "actionable" by the common law with regard to defamation per se must also be ascribed to the word "actionable" that is found in subsection 1. *Pulver v Dundee Cement Co*, 445 Mich 68, 75-76; 515 NW2d 728 (1994). Accordingly, where a plaintiff brings an action alleging words imputing lack of chastity or commission of a crime under MCL 600.2911(1); MSA 27A.2911(1), the inability to prove damages is not fatal to the claim.

The recordings clearly states or implies that Plaintiff has committed crimes. In fact, based on the May 19, 2015, Plaintiff was charged with the crime of misconduct in office. MCL 750.505. Therefore Plaintiff is entitled to damages for defamation *per se* in at least a nominal amount. It is clear that the recording was edited and was "malicious" and therefore Plaintiff is entitled to "substantial damages even where no special damages could be shown."

Next, Defendants argue that there is no defamation because "[b]oth the MSP Report and the HBO Report relied on Graham's recording as trustworthy." That doesn't mean it wasn't edited or false. In fact, it now demonstrates that it was defamatory. Then, Defendants attack the affidavit and report of Ed Primeau, a renowned audio forensic expert. Contrary to Defendants assertions, Ed Primeau's report (Ex. 8), dated August 1, 2018 is after his affidavit (Ex. 7), dated

28

June 29, 2018. The report details precisely the recordings that were analysed, including "Voice 002.m4a" (which is the May 19, 2015 recording)[3]. He then makes substantial findings:

- I have concluded that "Voice 002.m4a" is not a complete and accurate representation of the recorded conversation.

- When critically listening to "Voice 002_4.m4a" and "Voice 002.m4a" I concluded that the recording "Voice 002_4.m4a" was trimmed and 36 seconds of content was removed intentionally. It is also my opinion that this trimming must have been done intentionally. This calls into question the reliability, authenticity, and completeness of the files presented with the file title "Voice 002.m4a".

- After 34 years of practicing as an audio forensic expert, I have been trained to understand what the Federal Rules of Evidence state which is that only an authentic original can be admitted as evidence. Based on the forensic analysis provided in this report I believe beyond a reasonable degree of scientific certainty that the evidence recordings examined in the Materials Examined section are not authentic original recordings or authentic copies thereof.

The Defendants then ask a series of rather absurd questions: (1) *Were they recordings that the Detroit News and/or Allard and Graham represented as unaltered copies of the original recordings*? – That question is answered emphatically "yes", see *First Amended Complaint*, at ¶28, 126(c), 128-150, 451-454. (2) *Or were these just portions of those recordings*? – That answer is "that's the point" – the recordings were edited and then used by the House in its select committee hearings and then used by the House when it referred the case to the Attorney General for criminal proceedings – all done with the knowledge that the recordings were fabricated.

Then most miraculously, Defendants state that "*Courser fails to specify exactly how this publication of the recording has hurt him. He asserts a conclusory parade of horribles, but fails to support it with concrete examples.*" Really? How did it hurt him? The entire First Amended Complaint and the 82 exhibits describe how it hurt him and provide concrete examples. It appears that Defendants are simply cutting and pasting boilerplate arguments and not actually reading the complaint.

---

[3] See Affidavit ¶3 referencing the May 19, 2015 recordings as "Recording1.m4a" and "Voice 002.m4a".

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 353-2726 (Fax)

18.     **Count 8; Civil Stalking**

Once again, Defendants fail to understand the overarching scope of the complaint and its claims. Defendants directed Allard, Graham, and Cline to follow and stalk Plaintiff. *First Amended Complaint*, at ¶23(n), 66, 112, 114, 117, 183. In Michigan, "All those who, in pursuance of a common plan to commit a tortious act, actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with the wrongdoer." *Rosenberg v Rosenberg Bros Special Account,* 134 Mich App 342, 354; 351 NW2d 563 (1984) (quoting W. Prosser, *Handbook of the Law of Torts* §46, at 292 (4th ed 1971)). "Whatever was done in pursuance of it by one of the conspirators is to be considered as the act of all, and all are liable irrespective of the fact they did not actively participate therein." *Brown v Brown,* 338 Mich 492, 503, 61 NW2d 656 (1953) (quoting *Warsop v Cole,* 292 Mich 628, 291 NW 33 (1940)), *cert denied,* 348 US 816 (1954).

Plaintiff does not have to show that any of these Defendants personally took part in the stalking. Plaintiff only needs to allege that Defendants were part of the conspiracy, which is readily apparent and alleged. Notable, Defendants make an interesting statement in their footnote 25. They state, "To the extent Courser alleges that Cline, Allard, or Graham were acting within the scope of their employment if they participated in such activity, that theory must fail as legislative staffers are not tasked with such activity." Assuming this statement is true for the propose of argument sake, then Allard, Graham, and Cline are liable as state actors "in their individual capacity" and ergo, so are Defendants (also in their individual capacity) in this case tied to the acts of Allard, Graham, and Cline through the conspiracy and RICO claims.

30

19.     **Count 9; Invasion of Privacy**

"An action for intrusion upon seclusion focuses on the manner in which information is obtained, not its publication." *Doe v Mills*, 212 Mich App 73, 88; 536 NW2d 824 (1995). There are three elements to establish a prima facie case of intrusion upon seclusion: (1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable person. *Id.*

All elements are satisfied here. The allegations in the complaint support these elements. See *First Amended Complaint*, at ¶498-510. Plaintiff need only "state a claim to relief that is plausible on its face". Plaintiff has done do here sufficient to survive a 12(b)(6) motion.

20.     **Count 10; Tortious Interference with Business Relationships**

At the outset, to be clear, the Defendants published the HBO Report which contained false statements. "The elements of tortious interference with a business relationship are [1] the existence of a valid business relationship or expectancy, [2] knowledge of the relationship or expectancy on the part of the defendant, [3] an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [4] resultant damage to the plaintiff. . . ." *Mino v Clio School Dist*, 255 Mich App 60, 78; 661 NW2d 586 (2003). These elements are all set forth and satisfied in the First Amended Complaint ¶¶511-520. Plaintiff need only "state a claim to relief that is plausible on its face". Plaintiff has done do here sufficient to survive a 12(b)(6) motion.

21.     **Counts 11; Intentional Infliction of Emotional Distress**

"To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the

31

plaintiff." *Walsh v Taylor*, 263 Mich App 618, 634; 689 NW2d 506 (2004). These elements are pled and the conduct of Defendants is described in the First Amended Complaint ¶¶23(k), 301, 427, 480, 490, 497, 521-525, 526-549.

Defendants argue that their conduct was not "extreme". Keep in mind that Defendants are government officials. They know they have a duty to conduct themselves in a certain manner within certain legal parameters. Here, they intentional directed House employees (Allard, Graham, and Cline) to follow, stalk, wiretap, and surveil Plaintiff, for the purpose of obtaining "dirt" or damaging information; which is outside the scope of their duties as legislators and outside the "legislative sphere". "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 603; 374 NW2d 905 (1985) (citing Restatement Torts, 2d, § 46, comment d, pp 72-73. There is little doubt that if these facts are presented to a jury, in the context of the allegations set forth in this complaint, the average person would exclaim "Outrageous!". Plaintiff need only "state a claim to relief that is plausible on its face". Plaintiff has done do here sufficient to survive a 12(b)(6) motion.

### 22. **Count 12; Negligent Infliction of Emotional Distress**

The requirements in a negligence case are: 1) a duty, 2) a breach of that duty, 3) causation (both proximate cause and factual cause), and 4) damages. *Lorencz v Ford Motor Co,* 439 Mich 370, 375; 483 NW2d 844 (1992). A negligence action can be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. *Maiden v. Rozwood*, 461 Mich 109, 131; 597 NW2d 817 (1999). To determine whether the relationship between the parties is sufficient to create a legal duty, a court must consider "whether the defendant is under any obligation for the benefit of the particular plaintiff . . . ." *Id.* at 132 (citations and internal quotation omitted).

32

Another important consideration in whether a defendant owes a duty is "whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Moning v. Alfono*, 400 Mich 425, 439; 254 NW2d 759 (1977).

All is satisfied here. Certainly Defendants owed a duty to Plaintiff to not engaged in the conduct described in Count 12, *First Amended Complaint*, ¶¶526-549. If was foreseeable that Defendants conduct would create a risk of harm to Plaintiff. Plaintiff need only "state a claim to relief that is plausible on its face". Plaintiff has done do here sufficient to survive a 12(b)(6) motion.

### 23.  <u>Count 13; Indemnification</u>

Pursuant to MCL 691.1408(2), whenever a criminal action is commenced against a Representative based upon conduct in the court of their employment, the House of Representatives may pay for, engage, furnish services of an attorney, and reimburse the Representative for legal expenses. The House of Representatives has not paid for Plaintiff's attorney fees.

It is the general practice of the House of Representatives to indemnify Representatives accused of crimes. By way of example, the House of Representatives has indemnified and settled claims against Rep. Brian Banks. <u>Exhibits 84 and 85</u>. The State of Michigan is also paying the legal fees for former Governor Rick Snyder and also for those accused in the Flint water situation. <u>Exhibits 86 and 87</u>.

Decisions influenced by corruption – such as the decision to charge Plaintiff with any crimes – implicate the equal protection and due process guarantees of the federal and state constitutions. *Huse v East China Twp Bd.*, 330 Mich 465, 470-471, 47 NW2d 696 (1951). The actions by Defendants in referring charges to the Attorney General are invalid because they

33

violate the state and federal constitution. *Sharp v City of Lansing*, 464 Mich 792, 810-811, 629 NW2d 873 (2001).

This is particularly necessary considering Sgt. Brewer's prior statement: "If [the Attorney General] don't charge, then the attorney general's gonna be a bunch of, you know, weak minded, whatever, we're going to be bad investigator's, you know, it's, it's just one of those things that, there's a no-win." Exhibit 88 at 30.

Plaintiff has properly alleged that Defendants have intentionally discriminated against him. Therefore, the claim must survive Defendants' Rule 12(b)(6) motion.

### 24.    Count 14; Fraudulent Misrepresentation

In order to prevail on a fraud claim, a plaintiff must prove: (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. *Bergen v Baker*, 264 Mich App 376, 382; 691 NW2d 770 (2004).

All of these elements have been alleged. (1) Defendants Swartzle and Beydoun made a material representation; (2) the representation was false; (3) when they made the representation, they knew it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) they made the representation with the intention that Plaintiff rely upon it (5) Plaintiff in fact relied upon it; and (6) Plaintiff suffered damage. See *First Amended Complaint*, at ¶¶564-579. Plaintiff need only "state a claim to relief that is plausible on its face". Plaintiff has done do here sufficient to survive a 12(b)(6) motion.

34

25.    __Count 15; RICO__

Defendants were involved in this conspiracy. By engaging in this conspiracy, and being

part of the racketeering activities, Defendants are liable as co-conspirators for all of the claims

asserted. Defendants are jointly and severally liable for the damages. See *United States v*

*Corrado*, 227 F.3d 543, 552 (6th Cir. 2000) (co-conspirators in a RICO enterprise are held jointly

and severally liable for the reasonably foreseeable proceeds of the enterprise, and are not limited

to amounts each defendant personally obtained). See also *United States v Corrado*, 286 F.3d 934,

937-38 (6th Cir. 2002) (holding that co-conspirators in a RICO enterprise are jointly and

severally liable even for damages not part of the conspiratorial enterprise). See also *United States*

*v Lyons*, 870 F.Supp.2d 281, 290-291 (D. Mass. 2012) (gross proceeds of RICO enterprise, not

merely net proceeds, are subject to forfeiture under 18 USC 1963). A plaintiff "is not required to

prove the specific portion for which each defendant is responsible. Such a requirement would

allow defendants 'to mask the allocation of the proceeds to avoid forfeiting them altogether.'"

*Corrado*, *supra,* 227 F.3d at 552 (citing *United States v Simmons*, 154 F.3d 765, 769-70 (8th Cir.

1998)). See also *United States v Caporale*, 806 F.2d 1487, 1507 (11th Cir. 1986) (stating that

"joint and several liability is not only consistent with the statutory scheme [of RICO], but in

some cases will be necessary to achieve the aims of the legislation").

In their argument, Defendants completely miss the mark when they analyses the claims

set forth by Plaintiff under Rule 12(b)(6):

> Unlike the general conspiracy statute, §1962(d) requires no "overt act or specific
> act" in carrying it forward. *Salinas v. United States*, 522 U.S. 52, 63, 118 S.Ct.
> 469, 139 L.Ed.2d 352 (1997). Furthermore, "the supporters are as guilty as the
> perpetrators, so long as they share a common purpose, conspirators are liable for
> the acts of their co-conspirators." *Id.* at 64, 118 S.Ct. 469. A RICO conspirator
> "may be convicted 'so long as he' agrees with such other person or persons that
> they or one or more of them will engage in conduct that constitutes such crime."
> *Id.* at 65, 118 S.Ct. 469 (quoting the Model Penal Code §5.03(1)(a) (1962)
> (emphasis added)). *Salinas*, moreover, summarizes these conspiracy principles

35

applicable to the RICO charges in counts one and two:  "A conspiracy may exist even if a conspirator does not agree to commit or facilitate every part of the substantive offense. See *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 153-54, 60 S.Ct. 811, 84 L.Ed. 1129 (1940)." *Id.* at 63, 118 S.Ct. 469 (emphasis added). We agree that "it is not determinative that the defendant committed the crime to further his own agenda, if indeed he was only able to commit the crime by virtue of his position within the enterprise." *Id.*;  see also *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.1989) (en banc).

*Corrado*, *supra*, 227 F.3d at 552.  In summary, Defendants cannot avoid liability as co-conspirators.

Defendants also argue that Plaintiff has not pled "predicate acts". This is false. For example:

- 18 USC 1961(1)(A) extortion (B) fraud (sec 1029),
- mail fraud (sec 1341),
- wire fraud (sec 1343),
- obstruction of justice (sec 1503),
- obstruction of criminal investigations (sec 1510),
- obstruction of state or local law enforcement (sec 1511),
- extortion (sec 1951),
- extortion, fraud, obstruction of justice,

See *First Amended Complaint*, at ¶¶592-638. Plaintiff's allegations are sufficient to withstand a Rule 12(b)(6) motion.

### 26.   Count 16; Conspiracy to Violate RICO

Plaintiff has properly alleged all elements of a RICO violation and the existence of an illicit agreement to violate RICO. Therefore, the claim for conspiracy must survive Defendants' Ruler 12(b)(6) motion.

### 27.   Count 17; Spoliation

If there ever was a case that warranted a claim for spoliation of evidence, this is it. This Court need only read the First Amended Complaint at ¶¶654-663 and the related exhibits 69-82 to see the extent of the spoliation done intentionally, in bad faith, with gross negligence, and with malice. Defendants claim that Michigan does not recognize the independent tort of spoliation. To

36

the contrary, "Michigan has never explicitly refused to consider spoliation of evidence as an

actionable tort claim if the right facts were present." *Wilson v. Sinai Grace Hosp.*, 2004 WL

915044 (Mich. App. 2004) (unpublished per curium opinion) (Docket No. 233425). <u>Exhibit 89</u>.

This is that case. The Court further states:

> Based on these facts and the relative newness of the proposed tort (only two other jurisdictions had recognized it), this Court declined to create such a tort in Michigan. In reaching this decision, we explained that the key difference between this case and other states that had recognized the tort, was the fact that the employer had never assumed a duty to preserve the evidence in question. This Court did not explicitly decline to recognize spoliation of evidence as an actionable tort. We have since denied claims of spoliation of evidence in other instances, but have not considered the tort a medical malpractice claim wherein defendants have a statutory duty to preserve and provide access to medical records.

Our case is no different. The evidence clearly shows that Defendants assumed a duty when they created a litigation hold. Then they destroyed massive amounts of data intentionally, in bad faith, with malice, and through gross negligence. This has substantially denied Plaintiff the right and ability to pursue claims.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants motion in its entirety and award such costs and attorney fees to which Plaintiff may be entitled.

Respectfully submitted

DePERNO LAW OFFICE, PLLC

Dated: February 8, 2019

/s/ *Matthew S. DePerno*
Attorney for Plaintiff Todd COURSER
951 W. Milham Avenue
PO Box 1596
Portage, MI 49081
(269) 321-5064

DePerno Law Office, PLLC • 951 W. Milham Avenue, PO Box 1595 • Portage, MI 49081
(269) 321-5064 (phone) • (269) 353-2726 (fax)

### CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2019, I electronically filed the foregoing brief with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document to all attorneys of record.

Dated: February 8, 2019

*/s/ Matthew S. DePerno*
Matthew S. DePerno (P52622)
951 W. Milham Avenue
PO Box 1595
Portage, MI 49081
(269) 321-5064
matthew@depernolaw.com

38