UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD COURSER,

                Plaintiff,

v.

MICHIGAN HOUSE OF REPRESENTATIVES;
KEVIN G. COTTER, in his official capacity and
individual capacity; TIM L. BOWLIN, in his
official capacity and individual capacity; BROCK
SWARTZLE, in his official capacity and
individual capacity; NORM SAARI, in his official
capacity and individual capacity; EDWARD
McBROOM, in his official capacity and
individual capacity; and HASSAN BEYDOUN,
in his official capacity and individual capacity.

                Defendants.

**Case No. 1:18-cv-00882**

**Hon. Gordon J. Quist**

**REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANTS MICHIGAN
HOUSE OF REPRESENTATIVES,
KEVIN M. COTTER, TIM L. BOWLIN,
EDWARD MCBROOM, AND HASSAN
BEYDOUN'S SECOND MOTION TO
DISMISS**

**ORAL ARGUMENT REQUESTED**

| | |
|---|---|
| Matthew S. DePerno (P52622)<br>DePerno Law Office, PLLC<br>Attorney for Plaintiff Todd Courser<br>251 N. Rose Street, Suite 200<br>Kalamazoo, MI 49007<br>(269) 321-5064 | Gary Gordon (P26290)<br>Jason T. Hanselman (P61813)<br>Frank Dame Jr. (P81307)<br>Dykema Gossett PLLC<br>Attorneys for Defendants Michigan House of<br>Representatives, Cotter, Bowlin, McBroom,<br>and Beydoun<br>Capitol View<br>201 Townsend St., Suite 900<br>Lansing, MI 48933<br>(517) 374-9100 |

**REPLY TO PLAINTIFF'S RESPONSE TO THE HOUSE DEFENDANTS' SECOND
MOTION TO DISMISS**

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

## **TABLE OF CONTENTS**

I.   INTRODUCTION AND BACKGROUND ...................................................................1

II.  ARGUMENT ...........................................................................................................1

    1.    The Court need not convert this motion into a Motion for Summary Judgment .....1

    2.    Eleventh Amendment—The House Defendants acted solely in their official capacities as Representatives and legislative staff; Courser fails to allege facts showing that they acted in their individual capacities ...........................................2

    3.    Even if Courser's staff did illegally surveil him, the House Defendants cannot be vicariously liable ..................................................................................................3

    4.    Immunities ...........................................................................................................4

        a.  The House Defendants are largely protected by legislative immunity ...............4

        b.  The House Defendants are largely protected by governmental immunity .........5

        c.  The House Defendants are qualifiedly immune .................................................5

    5.    Courser fails to show that he has alleged facts sufficient to save Count 18 ............5

    6.    Courser fails to show that he has alleged facts sufficient to save Count 1 .............6

        a.  Procedural due process .......................................................................................6

        b.  Substantive due process .....................................................................................7

        c.  Equal Protection .................................................................................................7

        d.  Fourth Amendment ............................................................................................8

    7.    Courser fails to show that he has alleged facts sufficient to save Count 2 .............9

    8.    Courser fails to show that he has alleged facts sufficient to save Count 3 .............9

    9.    Courser fails to show that he has alleged facts sufficient to save Count 4 ...........11

    10.    Courser fails to show that he has alleged facts sufficient to save Count 5 ...........11

    11.    Courser fails to show that he has alleged facts sufficient to save Count 6 ...........11

    12.    Courser fails to show that he has alleged facts sufficient to save Count 7 ...........12

13.   Courser fails to show that he has alleged facts sufficient to save Count 8 ............13

14.   Courser fails to show that he has alleged facts sufficient to save Counts 9 &10 ..14

15.   Courser fails to show that he has alleged facts sufficient to save Count 11 ..........14

16.   Courser cannot save Count 12 .................................................................................14

17.   Courser cannot save Count 13 .................................................................................15

18.   Courser cannot save Count 14 .................................................................................15

19.   Courser cannot save Counts 15 and 16 ...................................................................16

20.   Course fails to show that Count 17 is based on a recognized cause of action .......16

III. CONCLUSION ...................................................................................................................16

DYKEMA GOSSETT PLLC • Capital View, 201 Townsend Street, Suite 900, Lansing, MI 48933

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bassett v. NCAA*,
   528 F.3d 426 (6th Cir. 2008) ..........................................................................1

*Engquist v. Or. Dep't of Agriculture*,
   553 U.S. 591 (2008)........................................................................................8

*In re Chapman*,
   166 U.S. 661 (1897)........................................................................................8

*Martin v. Wood*,
   772 F.3d 192 (4th Cir. 2014) ......................................................................2, 3

*Rogers v. Sisto*,
   2008 U.S. Dist. LEXIS 79193 (E.D. Cal. Aug. 25, 2008)....................................7

*Samberg v. Detroit Water & Sewer Co.*,
   2015 U.S. Dist. LEXIS 58819 (E.D. Mich. May 5, 2015).....................................15

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cl. 2006) ...............................................................14, 15

*Teel v. Meredith*,
   774 N.W.2d 527 (Mich. Ct. App. 2009) ...........................................................16

*United States v. Brewster*,
   408 U.S. 501 (1972)........................................................................................8

*Warnick v. Briggs*,
   2005 U.S. Dist. LEXIS 50288 (D. Utah July 1, 2005) ..........................................7

*Willowbrook v. Olech*,
   528 U.S. 562 (2000)........................................................................................7

*Wilson v. Sinai Grace Hosp.*,
   2004 Mich. App. LEXIS 1099 (Mich. Ct. App. April 29, 2004).............................16

RULES

Fed. R. Civ. P. 12(b)(6)...................................................................................1

Fed. R. Civ. P. 56 ...........................................................................................1

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

iv

**CONSTITUTIONAL PROVISIONS**

Mich. Const art 4, § 1..............................................................................................9

Mich. Const. art 4, § 7.........................................................................................9, 10

Mich. Const. art 4, § 16.......................................................................................9, 10

U.S. Const. amend. IV .............................................................................................8

U.S. Const. amend. XI .....................................................................................2, 3, 16

**STATUTES**

42 U.S.C. § 1983................................................................................................4, 6

42 U.S.C. § 1985................................................................................................4, 9

18 U.S.C. § 1030..................................................................................................11

Mich. Comp. Laws § 691.1408..............................................................................15

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

## I.   INTRODUCTION AND BACKGROUND

Courser's Response does little more than repeat the Amended Complaint. It ignores many of the House Defendants' arguments, and almost each putative analysis section is just a statement of law and a conclusory assertion that "Plaintiff successfully pleaded this cause of action." The House Defendants thoroughly analyzed Courser's mammoth Amended Complaint; Courser gave 38 pages of halfhearted, incomplete responses. Case-law quotations and unsupported legal conclusions cannot replace facts. Courser has failed to apply his alleged facts to the law cited and therefore fails to meaningfully respond to the House Defendants' Motion. Accordingly, the House Defendants' Motion should be granted.

## II.   ARGUMENT

**1.   The Court need not convert this Motion into a Motion for Summary Judgment.**

Courser states that because the House Defendants' brief pointed to documents other than the Amended Complaint—i.e., the MSP report; the HBO report; and the Select Committee testimony, minutes, and video—the proper pleading standard is Rule 56.[1] Resp. pp. 1–4.

Courser fails to address the House Defendants' arguments that the Court can at this stage consider the MSP report because it is a police report and central to Courser's Amended Complaint, and the HBO report because it is central to Courser's Amended Complaint and a public document. Courser even cited these documents in the Amended Complaint and attached them as exhibits. *See, e.g.*, Am. Compl. ¶¶ 88(d), 200. And a significant portion of the Amended Complaint is based on the Select Committee's actions. *See, e.g.*, Count 4. For these reasons, the proper legal standard is Rule 12(b)(6). *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (stating that a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to

---

[1] Notably, for the rest of his Response, Courser argues using the Rule 12(b)(6) pleading standard.

1

dismiss so long as they are referred to in the Complaint and are central to the claims contained therein").

2.  **Eleventh Amendment—The House Defendants acted solely in their official capacities as Representatives and legislative staff; Courser fails to allege facts showing that they acted in their individual capacities.**

Courser argues that the House allowed the Republican caucus to take over the House and hijack the expulsion process. Resp. pp. 5–6. Courser makes the nonsensical argument that the House Defendants did not act in their official capacities as Representatives and House Staff, but rather as Republicans. Because the Eleventh Amendment does not protect political parties, he says, it does not protect the House Defendants here. *Id.* at 8.

The question, however, is not whether the House Republicans acted as a unit, or whether the other House Defendants were Republicans (Cotter and McBroom were), but whether the House Defendants—irrespective of political party—acted in their official capacities.[2] If so, under the Eleventh Amendment, they are immune to Courser's claims.

All of Courser's allegations supported by *facts* regard fundamentally legislative things— e.g., the HBO investigation and expulsion proceedings. Unquestionably, these actions were taken under the Legislature's authority and are a part of the House Defendants' official duties. The House Defendants clearly acted in their official capacities. *See Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014).

Courser points to three facts that, in his view, show that Cotter acted outside his official capacity: Cotter wanted Courser gone, Resp. p. 6; Cotter knew about the affair before the story

---

[2] Courser's depiction of the Republican Representatives running the expulsion process is a dramatic attempt to make the commonplace appear sinister. In America, politicians always wear at least two hats, position and party—e.g., Governor and Democrat, Senator and Republican, etc. People identify with a political party, get elected, and govern as a group, with the majority making ultimate decisions. And whatever party is in power *leads* the Legislature. Courser's point about the Republicans taking over the process is effectively accusing an institution of allowing its leaders to lead it.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

broke, Resp. p. 7; and Allard said that Cotter was "whitewashing his role," Resp. p. 7. Courser insists that, given these facts, under the *Martin* test, the House Defendants acted in individual capacities.[3] Resp. 8–10.

These facts cannot carry the water Courser needs them to. Given Courser and Gamrat's affair and misuse of state resources, that Cotter supported Gamrat's expulsion from the House and likely would have supported expelling Courser had he not voluntarily resigned is neither surprising nor evidence of wrongdoing. Nor would it be surprising that Cotter had heard about the affair before the Detroit News made it public—rumors swirled, Courser's staff reached out to Cotter's office, and the Detroit News asked Cotter for a comment a week before breaking the story. And that Allard thought Cotter would want to spin the story is proof of nothing, especially when Allard does not explain what "role" he references. These facts do not show that Cotter or the other House Defendants ordered anyone to surveil Courser and, thus, that they acted in their individual capacities.

Almost all of Courser's counts—Counts 1, 2, 3, 4, 6, 7, 9, 10, 11, 12, 13, 14, and 17—are based on clearly official activities, such as the HBO investigation and operating the Select Committee. The House Defendants clearly acted in their official capacities, and the associated Counts are barred by the Eleventh Amendment.

**3. Even if Courser's staff did illegally surveil him, the House Defendants cannot be vicariously liable.**

Courser argues that there is a test for vicarious liability and that he has sufficiently alleged that the House Defendants directed others to engage in criminal activity. Resp. p. 12. This argument is inconsistent with Courser's argument in the Eleventh Amendment section. There, he cast the House Defendants' actions as rogue hijacking, far outside the scope of their

---

[3] Even if the facts meant anything (which they do not), only Cotter is implicated by these facts.

3

official duties. Here, he argues that Graham and Allard's ultimate employer should be responsible for their actions, which is only possible if they were performing official duties.

Further, Courser does not address the House Defendants' point that under a theory of vicarious liability, only the true "master" is liable for the actions of the "servants," and here, the true master is the House, not any of the individual House Defendants. Nor does he disagree that, as a matter of law, § 1983 and § 1985 liability cannot be vicariously imputed.  Finally, Courser's Response does not even pretend that he alleged facts showing vicarious liability.

### 4.  Immunities

#### a.  The House Defendants are largely protected by legislative immunity.

Courser argues that criminal activity—e.g., "[a]sking employees to follow a Representative, take photographs, conduct surveillance, conduct wiretapping and eavesdropping, and engage in a conspiracy"—is not within the legislative sphere. Resp. p. 13.

To a certain extent that is true, but Courser alleges no evidence that the House Defendants ever asked anyone to do these things. The House Defendants assert legislative immunity solely as to those actions that took place inside the legislative sphere—the HBO investigation, operating the Select Committee, etc. As noted above, most of Courser's claims are based on these actions. As Courser states, legislative immunity is broad, Resp. p. 13, and it covers much of the Amended Complaint here.

Courser argues that, if any of the evidence used by the House Defendants in the legislative sphere was obtained illegally, any legislative action involving that evidence cannot be considered legislative in nature. Resp. pp. 13–14. In other words, Courser says, because the House Defendants behaved illegally, all of their associated actions are outside the legislative sphere. However, Courser cites no authority for this novel, proposed exception to the doctrine of

DYKEMA GOSSETT PLLC • Capital View, 201 Townsend Street, Suite 900, Lansing, MI 48933

legislative immunity. The test for whether an action is legislative is whether it regards matters within a legislature's jurisdiction—whether the actions are "legal" is not part of the analysis.

### b.   The House Defendants are largely protected by governmental immunity.

Courser does not disagree that the House Defendants have governmental immunity to all tort claims based on non-criminal actions. He argues only that the House Defendants acted outside their scope of authority, in bad faith, and with malice, and that this misconduct was willful and corrupt. Resp. p. 15. But the evidence he cites references only the actions of Joseph Gamrat, Krell, Allard, and Graham—none of the House Defendants. After laying out facts showing legitimate concerted action between Joseph Gamrat, Allard, and Graham, he merely tacks on at the end, "And Defendants made them do it." That fact-less assertion is not enough. The Amended Complaint shows that the House Defendants acted in their official capacities and without malice.

### c.   The House Defendants are qualifiedly immune.

This section of Courser's Response contains no analysis. Resp. pp. 15–16. He merely states the qualified-immunity rule and concludes that the House Defendants are not protected by it. His "argument" under the test's second prong is a single sentence, merely concluding that the House Defendants must have known that what they were doing was wrong. Resp. p. 16. This is not an argument—just an unsupported legal conclusion.

### 5.   Courser fails to show that he has alleged facts sufficient to save Count 18.

Courser argues that the Amended Complaint "sets forth specific facts of a conspiracy," and that the House Defendants' argument to the contrary is mere boilerplate. Resp. p. 16. The Amended Complaint does state specific facts, *but not against the House Defendants*. Courser spends several pages detailing what Allard, Graham, and Joseph Gamrat did, but never alleges a

5

single fact that supports his ultimate theory that the House Defendants conspired with them. Courser's cites to empty, conclusory paragraphs will not change that.

### 6.  Courser fails to show that he has alleged facts sufficient to save Count 1.

Courser argues that he sufficiently alleged under § 1983 violations of his procedural due process, substantive due process, equal protection, and Fourth Amendment rights.

#### a.  Procedural due process

Courser's response to the House Defendants' argument that he failed to allege facts connecting them with Allard, Graham, and Joseph Gamrat is, "This is not accurate." Resp. p. 17. That is hardly an argument. He then asks what public record contradicts his Amended Complaint. *Id.* The HBO and MSP reports[4] both contradict his conclusions, as explained at length in the House Defendants' motion. Although Courser reasserts the ways in which he was allegedly deprived of procedural due process, he fails to explain this following quotation of his, given under oath:

> In any event, I would just say that, yeah, I think it has been an absolutely fair process and I am very thankful for you guys and the effort you have put in over your summer. I know Hassan [Beydoun] has put in a whole bunch of work and walked through all of that. And I know Brock [Swartzle] has, as well. So I would say it's been an absolutely fair process.[5]

Courser did not change his tune until he filed his first lawsuit for damages almost a year later. Importantly, though Courser may now prefer the extra steps he discusses, he does not explain *why* they are required or cite authorities in support. Mere disagreement with how an investigation was run does not rise to the level of a constitutional violation.

---

[4] Which the Court may consider, as explained above.

[5]  Mot. p. 19.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

Further, Courser does not argue that he was deprived of a property interest, just a liberty interest. Resp. p. 17. However, a plaintiff must allege a "specific liberty interest"; they cannot, as Courser has done here, collect a pile of general complaints and attach the label "liberty interest." *Rogers v. Sisto*, 2008 U.S. Dist. LEXIS 79193, at *12 (E.D. Cal. Aug. 25, 2008). *See also Warnick v. Briggs*, 2005 U.S. Dist. LEXIS 50288, at *13 (D. Utah July 1, 2005) (stating that a procedural due process plaintiff must name a "specific" liberty interest). Rather than naming a specific liberty interest, Courser again cites only conclusory paragraphs from his Amended Complaint. Finally recognizing the serious problem with these claims given that he was not expelled but voluntarily resigned, Courser argues that he was constructively expelled. Resp. p. 17. The House Defendants are not aware of such a theory, and Courser cites no authority for it.

### b.  Substantive due process

Courser argues that the Amended Complaint "is littered with specific facts" showing a substantive-due-process violation, and to prove it, he lists several of these alleged facts. Resp. p. 18. The problem with these "facts" is that, yet again, they are either purely conclusory or simply do not apply to or mention the House Defendants. While Courser pleads *facts* about Allard, Graham, and Joseph Gamrat, he pleads only *conclusions* about the House Defendants.[6] The few facts that do talk about the House Defendants merely show them commenting on Allard and Graham's credibility as witnesses. None of this rises to the level of a substantive due process violation.

### c.  Equal Protection

Courser argues that he can press an Equal Protection Clause challenge under the class-of-one theory articulated in *Willowbrook v. Olech*, 528 U.S. 562 (2000). Resp. p. 19. However,

---

[6] Notably, Courser obsesses over the lack of recording "authentication", however, he never explains why the HBO would need to authenticate a recording that Courser himself *admitted under oath* was legitimate.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

Courser ignores a critical exception to that theory: government employment. In *Engquist v. Or. Dep't of Agriculture*, 553 U.S. 591, 598 (2008), the Supreme Court stated that "the class-of-one theory of equal protection does not apply in the public employment context." The Court reasoned that there is a "crucial difference" between "the government exercising 'the power to regulate or license, as lawmaker,' and the government" managing its "'internal operation.'" *Engquist*, 553 U.S. at 598 (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896 (1961)). In *In re Chapman*, 166 U.S. 661, 668 (1897), the Supreme Court stated that a legislature's discipline of its members is an exercise of its "inherent power of self-protection," used to prevent a member from "destroy[ing] public confidence in the body." Thus, the class-of-one theory doubly does not apply to Courser. He was a government employee[7] and if the Legislature had expelled him, it simply would have been controlling its internal operation.

Even if the Court chooses to apply the class-of-one theory, Courser fails to state a claim. A legislature has "almost unbridled discretion" to discipline its members. *United States v. Brewster*, 408 U.S. 501, 519 (1972). Thus, the Court must apply a highly deferential standard. Courser does not show another instance when the Legislature considered a sitting Representative who had an affair, used public resources to cover it up for months, and then sent a "false flag" email claiming to be a "bisexual porn addicted sexual deviant" in order to "inoculate the herd"— that is, conceal his misdeeds from the public. The prior three expulsion proceedings were for remarkably disparate reasons, making this case ill-suited for an Equal Protection Clause claim.

### d.  Fourth Amendment

Courser argues that the House Defendants violated the Fourth Amendment because, even if they did not "press[] the record button," they "directed" their "minions" to do so. Resp. pp.

---

[7] Courser admits this in Count 13, where he seeks indemnification as a government employee.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

20–21. The House Defendants do not disagree that Courser was recorded. But there is no factual support for the idea that the House Defendants "directed" that recording. Courser utterly fails to allege factual matter sufficient to state such a claim.

### 7. Courser fails to show that he has alleged facts sufficient to save Count 2.

Courser argues that 42 U.S.C. § 1985(2)–(3) apply to state officials and that the House Defendants conspired against him. Resp. pp. 21–22. He cites several paragraphs in the Amended Complaint allegedly showing a conspiracy to expel him and to obstruct "justice in state courts." Resp. p. 21. First, "justice in state courts" is a red herring, as Courser's allegations do not focus on state courts, but on the expulsion proceedings. Second, for all of the reasons stated above in section 5, Courser fails to allege *facts* supporting his conspiracy claim. The paragraphs he cites are, again, just conclusory, wholly unsupported statements.

### 8. Courser fails to show that he has alleged facts sufficient to save Count 3.

The House Defendants showed that Mich. Const. art 4, § 16, simply recognizes a power the Supreme Court has said is inherent to every legislative body—i.e., the power to control its membership—and then modestly limits that power. Courser does not respond with argument; he just contrarily states—without relying on authority, and ignoring the House Defendants' case law—that the Legislature's authority to expel its members is not inherent, but is given by § 16.[8] This is wrong for the several reasons stated in the Motion.

Courser contends that, under § 16, the authority to expel members is strictly limited to considering the qualification, elections, and returns of a member is in doubt; and "qualifications," he argues, is strictly limited to those requirements listed in Mich. Const. art 4, §

---

[8] Notably, this interpretation is buttressed by the Michigan Constitution art 4, § 1, which states that all legislative power is vested in the Legislature, "[e]xcept to the extent limited by" certain constitutional provisions, including article 4. Michigan's constitution explicitly states that article 4 provisions do not grant specific legislative authority, but limit an otherwise unqualified grant.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

7 (21 years of age, district resident, etc.). *Id.* This analysis is flawed. The sentence at issue in § 16 states: "Each house shall be the sole judge of the qualifications, elections and returns of its members, and may, with the concurrence of two-thirds of all the members elected thereto and serving therein, expel a member." Courser offers no reason to interpret the first half of that sentence as limiting or modifying the second and cites no authority in support. The sentence's grammar does not call for this interpretation, and the interpretation violates common sense. Suppose a Representative embezzled millions of dollars in state money, committed serial sex crimes, or murdered someone. In Courser's view, the House could not expel them as long as they were 21, resided in their district, and were duly elected. This is ridiculous. No expulsion clause in the state or federal constitutions is so limited. This sentence simply articulates two independent powers—the power to expel and the power to seat representatives.

Further, Courser makes much of the fact that the House Defendants call the expulsion power "broad" while explaining that § 16 limits it. Resp. p. 22–23. "[They] cannot have it both ways," he says. Resp. 23. But saying that a broad power has limits is not contradictory or notable. This Court exercises broad yet limited authority every day—e.g., considering deadline or page-limit extensions, motions to amend, or motions for injunctive relief.[9]

Finally, Courser argues that § 16 is too vague because it articulates no standards. Resp. p. 23–24. But most constitutional provisions are arguably vague—are all of these now unconstitutional? Notably, Courser fails to address the House Defendants' most fundamental argument against Count 3: whether a state constitution can even be unconstitutionally vague.

---

[9] This wide discretion explains why the Legislature initiates expulsion proceedings in some situations but not others.

10

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

**9.   Courser fails to show that he has alleged facts sufficient to save Count 4.**

Courser argues that the *Bauer* opinion is unhelpful because, supposedly, the complaint there "did not plead the level or detail or provide" the history he does. Resp. p. 24–25. It is true that Courser's Amended Complaint is longer than the *Bauer* complaint, but volume is no substitute for relevance. The vast majority of Courser's evidence—copious recitations of what Allard, Graham and other non-defendants said or did—is simply irrelevant to Count 4; only the HBO investigation and Select Committee hearings are relevant for that. Regarding these facts, Courser's allegations are actually less thorough than the *Bauer* complaint. The *Bauer* complaint spent 30 pages discussing the investigation and hearings, while Courser spent only 22 pages on them. The *Bauer* complaint was a focused, single-count complaint, while Count 4 is one of eighteen kitchen-sink counts. In sum, *Bauer*'s complaint alleged all of the pertinent facts alleged here, is applicable and should be followed here.

**10.   Courser fails to show that he has alleged facts sufficient to save Count 5.**

Courser spends several paragraphs arguing that Allard "directed" Graham to record a conversation between Courser and Gamrat of which Graham was not a part. Resp. pp. 25–26. Therefore, he concludes, because Graham was directed to record Courser, the House Defendants are guilty of wiretapping. He fails to explain why Allard's direction should be imputed to the House Defendants and cites no evidence in support of that notion.

**11.   Courser fails to show that he has alleged facts sufficient to save Count 6.**

Courser argues that the House Defendants seized his personal property, Resp. p. 26, but the evidence he cites references only his work files, work computers, and work hard drives. He next argues that § 1030(g)'s two-year statute of limitations does not apply to him because he did not receive the evidence proving the putative illegal entry until May 2017. But that date is a non-

11

sequitur. Courser may not have known until May 2017 precisely what keystrokes the House investigators made when examining his House-issued work computer, but he knew in August 2015 that the House had removed its computers from his office, and he believed at that time that this removal was illegal. This is demonstrated by the fact that Courser alleged in his 2016 Complaint that the House Defendants "illegally seized" his work computers and destroyed information. 2016 Compl. ¶¶ 254–56. May 2017 does not matter, and the statute of limitations bars this claim.

**12. Courser fails to show that he has alleged facts sufficient to save Count 7.**

Courser's defamation claim has become confused. The primary question with a defamation claim is what false, injurious statement the defendant made about the plaintiff. Courser can only muster one such assertion by the House Defendants: the false-flag-email recording is authentic. Resp. pp. 28–29. This slight fact cannot support the weight of Courser's defamation claim.

First, edited does not mean inauthentic. Almost all recordings used by the media, prosecutors in Court, or agency investigations are shortened—i.e., edited—somewhat to exempt only the portion relevant to the issue being alleged, but no one claims that they are therefore "fabricated." Second, stepping into Courser's fantasy for a moment, suppose the House Defendants lied to the public about whether a recording was authentic: that lie, by itself, separated from the content of the recording, did not impugn or damage Courser in any way because it had nothing to do with Courser; it was only about the legitimacy of the recording. The lie only matters if the false recording itself is damaging. The question thus becomes whether the recording's *contents* were false and injurious. If they were—if Courser did not really ask Graham to send a false flag email—then a defamation claim becomes less fantastic. Here, Courser's

12

argument falters. Courser discussed the recording in depth during his hearing, calling it the actions of a desperate man and saying he regretted it and would do things differently if he could; but never, not once, did he pretend, as he does here, that the recording was "fabricated." One committee member asked Courser point blank if it was his voice on the recording, and Courser admitted it was.[10] In short, as Courser's own testimony demonstrates, the only injurious content the House Defendants released—the recording's contents—was not a lie or fabrication.

Courser argues that the statute of limitations does not apply because he did not discover conclusive proof that the tapes had been fabricated until May 2018. Resp. p. 11–12. But Courser's defamation claim is not premised on fabrication, but on dissemination. When exactly Courser received what he considers conclusive evidence of this "fabrication" (i.e., exempting) does not matter. The discovery standard does not act to toll the statute of limitations until a person finds certain evidence to back up their assertions. As Courser notes, it tolls the statute of limitations only until the claims can "be alleged in a complaint." Resp. p. 11 (citing *Moll v Abbott Labratories*, 444 Mich 1, 15; 506 NW2d 816 (1993)). Courser first accused the House Defendants of fabricating these recordings just days after they were released in 2015. He believed and could have alleged long before May 2018 that the House Defendants fabricated the recordings.

**13. Courser fails to show that he has alleged facts sufficient to save Count 8.**

Courser argues that the House Defendants conspired with Allard and Graham to stalk him. Resp. p. 30. The House Defendants have exhaustively discussed above and in their motion the utter lack of facts supporting this claim. *See, e.g.*, *supra*, Sections 5 and 7. Courser's citations to empty conclusory statements do not help his claim. Courser also contends that persons can be

---

[10]  Video of Select Committee Hearing on September 9, 2015, minute mark 2:44:00, https://www.house.mi.gov/SharedVideo/PlayVideoArchive.html?video=EXAM-090915.mp4.

13

liable as state actors in their individual capacity. Resp. p. 30. First, this is a contradiction—either people are liable in their capacity as state actors, or they are liable as individuals, it cannot be both. Second, as explained above, vicarious liability does not work here, and even if it did, it attaches only to the House, not the House Defendants. Notably, Courser failed to respond to the House Defendants' argument that Allard and Graham's actions were not stalking.

**14. Courser fails to show that he has alleged facts sufficient to save Counts 9 and 10.**

The House Defendants spent over five pages giving specific reasons why, even when accepting Courser's naked conclusions as true, these causes of action should be dismissed. Courser's response is less than a page and consists of statements of law and the following analyses: "[a]ll elements are satisfied here" and "[t]hese elements are all set forth and satisfied." Resp. p. 31. This is not argument but contrariness. It is axiomatic that "mere statements of disagreement . . . do not amount to a developed argument." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cl. 2006). The Court should consider Courser's silence a concession.

**15. Courser fails to show that he has alleged facts sufficient to save Count 11.**

Courser argues that the House Defendants' alleged direction to Allard and Graham "to follow, stalk, wiretap, and surveil" him was "extreme." Resp. p. 32. Perhaps such a direction would be extreme, but, again, there is no evidence of any such direction.

**16. Courser cannot save Count 12.**

Courser ignores and, thus, concedes the House Defendants' argument that Michigan courts do not extend "negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result."

*Samberg v. Detroit Water & Sewer Co.*, 2015 U.S. Dist. LEXIS 58819, at *7 (E.D. Mich. May 5, 2015) (quoting *Duran v. The Detroit News*, 504 N.W.2d 715 (Mich. Ct. App. 1993)).

### 17. Courser cannot save Count 13.

Courser backtracks his claim that the House *must* indemnify him, now simply arguing that it *should* indemnify him. Resp. p. 33. Courser fails to explain, however, why the Court should interject itself into a decision that Mich. Comp. Laws § 691.1408(3) explicitly says cannot create a "liability [for] a governmental agency."

He contends that "the decision to charge [him] with any crimes" and "referring charges to the Attorney General . . . violate[d] the state and federal constitutions," Resp. pp. 33–34, but there are several reasons this argument is insufficient. First, the House Defendants are not prosecutors and, thus, did not charge Courser with crimes. Second, he does not explain why asking the Attorney General to investigate his admitted misuse of public resources is unconstitutional and creates liability under § 691.1408. And third, it is unclear what either decision has to do with the House's decision to not indemnify him. Courser fails to show that the Legislature's exercise of discretion under § 691.1408 should be judicially reviewed.

### 18. Courser cannot save Count 14.

The House Defendants spent four pages explaining why Swartzle and Beydoun did not fraudulently misrepresent anything to Courser. Courser spends a half page reciting a statement of law and concludes without analysis that each element is met. Yet again these are empty conclusions that do not truly respond to the House Defendants' thorough discussion of this claim. As noted above, "mere statements of disagreement . . . do not amount to a developed argument." *SmithKline Beecham Corp*, 439 F3d at 1320.

15

**19. Courser cannot save Counts 15 and 16.**

Courser argues that the House Defendants are liable for RICO violations because they "were involved in this conspiracy." Resp. p. 35. For all of the reasons stated above, Courser fails to allege well-pleaded facts showing a conspiracy involving the House Defendants. He argues that he has pleaded the necessary predicate facts. Resp. p. 36. Undoubtedly, he *states* that the House Defendants have committed predicate acts, but that does not mean that this conclusion is *well-pleaded*—that would require facts, which he does not have.

**20. Courser fails to show that Count 17 is based on a recognized cause of action.**

Courser argues that the tort of spoliation is a valid cause of action. Resp. p. 36. In support, he cites *Wilson v. Sinai Grace Hosp.*, 2004 Mich. App. LEXIS 1099, at *14 (Mich. Ct. App. April 29, 2004), which held that, as of 2004, "Michigan has never explicitly refused to consider the spoliation of evidence as an actionable tort claim."

Courser fails to inform the Court, however, that the Michigan Court of Appeals, in *Teel v. Meredith*, 774 N.W.2d 527, 529 (Mich. Ct. App. 2009), issued a published opinion stating explicitly that "Michigan does not recognize spoliation of evidence as a valid cause of action." The House Defendants raised this point in their motion, but Courser ignored it and the other three arguments raised in that section. The Court should dismiss this claim.

## III.  <u>CONCLUSION</u>

To the extent Courser's claims are based on the House Defendants' official actions, they are barred by the Eleventh Amendment. To the extent they are based on allegedly criminal actions, Courser utterly fails to allege supporting facts. His theory that top legislative leaders ordered his staff to wiretap, surveil, and stalk him, and that they "fabricated" a recording, all for the sake of passing road funding, is far-fetched and massive. Such fantastical theories cannot be

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, MI 48933

sustained on empty conclusions, especially when discredited by all available evidence. The Court should dismiss the Amended Complaint.

                                        Respectfully submitted,

                                        DYKEMA GOSSETT PLLC

Date:  February 22, 2019

                                By:  _/s/ Jason T. Hanselman_
                                        Gary Gordon (P26290)
                                        Jason T. Hanselman (P61813)
                                        Frank Dame Jr. (P81307)
                                        Dykema Gossett PLLC
                                        Attorneys for Defendants Michigan House of
                                        Representatives, Cotter, Bowlin, McBroom,
                                        and Beydoun.
                                        201 Townsend St., Suite 900
                                        Lansing, MI 48933

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

*/s/ Jason T. Hanselman*
Jason T. Hanselman (P61813)
Dykema Gossett PLLC
Attorneys for Defendants Michigan House of
Representatives, Cotter, Bowlin, McBroom,
and Beydoun.
201 Townsend St., Suite 900
Lansing, MI 48933

106249.000004 4839-4106-2536.6

DYKEMA GOSSETT PLLC • Capital View., 201 Townsend Street, Suite 900, Lansing, MI 48933