UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TODD COURSER,<br><br>    Plaintiff,<br>v.<br><br>MICHIGAN HOUSE OF<br>REPRESENTATIVES, et al,<br><br>    Defendants. | Case No. 1:18-CV-00882<br><br>Hon. Gordon J. Quist<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS NORM SAARI AND BROCK
SWARTZLE'S RESPONSE TO PLAINTIFF TODD
COURSER'S MOTION FOR SANCTIONS PURSUANT TO RULE 37
<u>BASED ON DESTRUCTION OF EVIDENCE AND SPOLIATION OF EVIDENCE</u>**

{ELG15093}

## **TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| FACTUAL BACKGROUND | | 2 |
| ARGUMENT | | 4 |
| I. | Legal Standards Under Fed. R. Civ. P. 37 | 4 |
| II. | Mr. Saari Was Not Involved With The Preservation Of ESI And Had No Position With The House When A Hold Was Implemented | 6 |
| III. | Rule 37's Concerns Are Not Implicated Because Reasonable Steps Were Taken To Preserve Relevant Evidence And Because Discovery Has Not Yet Begun | 7 |
| IV. | Mr. Courser Makes No Showing Of Intent Relative To Any Relevant Information That Was Allegedly Unpreserved | 9 |
| CONCLUSION | | 10 |

# **INDEX OF AUTHORITIES**

<u>Case</u>                                                                                                                                    <u>Page(s)</u>

*John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008)                                                       4

*Konica Minolta Bus. Solutions, U.S.A. Inc. v. Lowery Corp.*,                                      5, 7, 9
    Case No. 15-cv-11254, 2016 WL 4537847, at *2–3
    (E.D. Mich. Aug. 31, 2016) (Roberts, J.)

*Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 775–76                            7
    (E.D. Mich. January 10, 2019)

*Automated Solutions Corp. v. Paragon Data Sys., Inc.*,                                          7
    756 F.3d 504, 516 (6th Cir. 2014)

## INTRODUCTION

The only sanctionable conduct before this Court is Plaintiff Todd Courser's ("Mr. Courser") present motion.  Mr. Courser's factual allegations that Defendants the Michigan House of Representatives (the "House"), Kevin G. Cotter ("Cotter"), Tim Bowlin ("Bowlin"), Brock Swartzle ("Mr. Swartzle"), Norm Saari ("Mr. Saari"), Edward McBroom ("McBroom"), and Hassan Beydoun ("Beydoun")[1] intentionally, willfully, and in bad faith destroyed electronically stored information ("ESI") that allegedly was contained on computers included in a litigation hold instituted by the House when it learned of a potential extramarital affair between Mr. Courser and a fellow then-representative, Cindy Gamrat, Pltf.'s Mtn. ¶¶ 2–3, 9, and 14d, lack merit.  So too for Mr. Courser's legal arguments.

In fact, Mr. Courser is putting the cart before the horse with this motion because discovery has not yet begun, this Court has not entered any orders about discovery, and Mr. Courser cannot show that anyone failed to preserve or destroyed relevant ESI with the requisite intent or prejudice to Mr. Courser to trigger Rule 37's sanction provisions.  Assuming Mr. Courser's first amended complaint survives the pending motions to dismiss, he may obtain discovery about only "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).   At this juncture, neither the Court nor the parties know the scope of Mr. Courser's claims or the discovery Mr.

---

1   The House, Cotter, Bowlin, McBroom, and Beydoun are collectively referred to as "Defendants".   Any reference to Mr. Saari or Mr. Swartzle apart from those defined as "Defendants" will be made specifically.

{ELG15093} 1

Courser will be permitted to seek. Thus, it is procedurally improper for this Court to issue an order in the form of a discovery sanction. For these reasons and the reasons below, sanctions are inappropriate, and Mr. Courser's motion should be denied.

## FACTUAL BACKGROUND

In his motion, Mr. Courser alleges that the Defendants along with Mr. Swartzle and Mr. Saari breached their duty with respect to preserving ESI because: (1) they accessed, modified, and deleted files on computers of Mr. Courser and his staff (Pltf.'s Mtn. ¶ 12); (2) they deleted the instant-messaging program (Lync) used by Mr. Courser and his staff for inter-office communications (*id.* at ¶ 13); (3) they removed, wrote-over, and "bleached" files using a special computer program (Kaspersky) (*id.*); and (4) they locked/encrypted the computers with a BitLocker (*id.*). Without belaboring over every detail of which this Court is undoubtedly familiar, the relevant facts are as follows. On Friday, August 7, 2015, the Detroit News published an article about Mr. Courser's extramarital affair and a potential cover-up, and upon learning of this, the House's General Counsel, Mr. Swartzle, based on experience in civil litigation and with the civil rules of procedure, instructed House staff to preserve relevant records for a future claim or dispute. Am. Compl., Ex. 27, at pp. 4–5 (ECF No. 33-27 at PageID.1743–44); Ex. 1, March 9, 2018 Transcript of Mr. Swartzle's Testimony in Lapeer County Circuit Court Case No. 17-013022-FH, *People v. Courser*, at pp. 281–83, 298.

On Monday, August 10, 2015, after receiving instructions from the House Business Office, Catherine Hunter ("Ms. Hunter"), the House's IT Director, took possession of and began processing/making copies of the information contained on the seized computers. *See* Pltf.'s Mtn., Ex. 5, at p. 3 (ECF No. 61-5 at PageID.2658); *see also* Am. Compl., Ex. 74, Transcript of Ms. Hunter's Testimony in Lapeer County Circuit Court Case No. 17-013022-FH, *People v. Courser*,

at pp. 189, 192 (ECF No. 33-74 at PageID.2087).  Thereafter, Ms. Hunter (1) plugged the computers into a power outlet (*id.*); (2) logged onto the computers using one of several available administrator accounts for use by the House's IT staff (*id.* at 192, 194); (3) plugged in an external hard drive (i.e. a flash drive or a thumb drive) to the computers using one of the computer's USB ports (*id.* at 195–96); (4) transferred a copy of all "local user files" on each computer to the external hard drive (*id.*); and then (5) turned off the respective computer, unplugged it, and placed them in a sequestered place in her office (*id.* at 192).  Ms. Hunter processed each computer in the same fashion, transferring a copy of each computer's local user files onto the same external hard drive that Ms. Hunter kept in a locked drawer in her office.  *Id.* at 191, 196.  All of these steps were part of the House IT staff's "common" and "standard procedures" upon implementation of a litigation hold.  *Id.* at 196, 209–10.

Ms. Hunter further testified that while taking these steps she did not actively attempt to prevent the computers from automatically accessing the House's internet network.  *Id.* at 192, 197, 212.  When a House computer is powered on and connected to the internet network, it may automatically begin to perform update procedures relating to background files for the computer's operating and anti-virus software programs.  *Id.* at 201–04.  Ms. Hunter testified that the automatic updates to House computers' operating-system software are routine.  *Id.* at 202, 204.  Moreover, when an entire operating system is updated (not merely just some aspects of the operating system/updates to the anti-virus software), background operating system files are cleaned-out from the computer's operating system (i.e. deleted) or modified for the new operating system software files to be installed in place of the older system files.  *Id.* at 203.  These are routine technology updates to enhance usability and to keep files/networks safe from the latest iterations of viruses/malware.

As far as the House's anti-virus software, Ms. Hunter testified that the House uses a program from a software company called Kaspersky and that the company's anti-virus software was the only Kaspersky product that the House uses on its computers. *Id.* at 203–04, 212. Indeed, Ms. Hunter also testified that the anti-virus software "runs in the background" on House computers, meaning it is not a program that a user must proactively open to use like Microsoft Word. *Id.* Conversely, Ms. Hunter was not familiar with Kaspersky's file shredding software. *Id.* at 212–13. Admittedly, Ms. Hunter did not proactively attempt to stop the House computers from performing these automatic processes to background operating system files or to the anti-virus software. *Id.* at 204. But Ms. Hunter was unequivocal when she testified that she was the only person who had access to the computers between August 10 - September 11 and that she never deleted, modified, or added files to any of the computers in her possession. *Id.* at 204, 206, 208. All computers remained in Ms. Hunter's office until the Michigan State Police took possession on September 11. *Id.* at 191; Pltf.'s Mot. ¶¶ 11–12. Anything relevant to the House's investigation (e.g., the 800-plus pages of documents in the HBO Report (see Am. Compl. ¶ 60, n.3)) was preserved under the House's litigation hold and subsequently turned over to the Michigan State Police. Ex. 1, at pp. 306, 308–09.

**ARGUMENT**

**I.       Legal Standards Under Fed. R. Civ. P. 37**

As a starting point, a party "to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citation omitted). But "[c]ivil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to

identify and preserve every detail[.]" *Id.* at 460. Moreover, "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *Id.* (citation omitted).

When a court finds that a party breached its duty to preserve relevant information, the court's authority to impose sanctions arises from the court's inherent power to control the judicial process. *Konica Minolta Bus. Solutions, U.S.A. Inc. v. Lowery Corp.*, Case No. 15-cv-11254, 2016 WL 4537847, at *2–3 (E.D. Mich. Aug. 31, 2016) (Roberts, J.) (external citation omitted) (denying without prejudice plaintiff's motion for sanctions for parties to conduct further discovery). Specifically, in examining sanctions for spoliation, federal courts apply Fed. R. Civ. P. 37. *Id.* (citation omitted). Significant amendments to Rule 37 became effective on December 1, 2015 (*id.*), and the current version of Rule 37 now states:

> (e) Failure To Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost *because a party failed to take reasonable steps to preserve it*, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) *upon finding prejudice to another party* from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) *only upon finding that the party acted with the intent* to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37 (emphasis added); see also *Konica Minolta*, *supra*, at *2–3. Post-2015 amendments, "a Court must determine that four predicate elements are met under Rule 37(e) before turning to the sub-elements of (e)(1) and (e)(2): (a) the existence of ESI of a type that should have

{ELG15093}            5

been preserved; (b) ESI is lost; (c) the loss results from a party's failure to take reasonable steps to preserve it; and (d) it cannot be restored or replaced through additional discovery." *Id.*

In addition, sanctions under subsections (e)(1) and (e)(2) require different elements and lead to different forms of sanctions. *Id.* Under the former, the court must find prejudice to the moving party, and only then may the court then order measures no greater than necessary to cure the prejudice. *Id.* Under the latter on the other hand, before a Court can impose sanctions, it must find that the offending party that caused the loss of information acted with the intent to deprive the moving party of the information's use in the litigation. *Id.* If intent is found, possible sanctions under (e)(2) include an adverse presumption, an adverse instruction to the jury, or default judgment. *Id.* Indeed, nearly all the cases upon which Mr. Courser relies are pre-2015 amendments to Rule 37; thus, they proffer the wrong legal standard/available remedies (culpable state of mind/authorizing adverse jury instruction on finding of mere negligence) and are inapposite to analyzing Mr. Courser's claims in his motion.

## II. Mr. Saari Was Not Involved With The Preservation Of ESI And Had No Position With The House When A Hold Was Implemented

Given the timing of Mr. Swartzle's and the House's learning of this information and then taking measures to preserve relevant information on August 7, 2015, Mr. Courser's motion should be denied outright as to Mr. Saari because it is undisputed that Mr. Saari left his position as Chief of Staff to Cotter on August 1, 2015. *See Courser v. Allard, et al.*, No. 1:16-CV-1108 (ECF No. 98) PageID.2910. Simply put, because Mr. Saari no longer worked in the House when it implemented measures to preserve information relative to Mr. Courser, Mr. Saari could not have had any role in the alleged non-preservation of any ESI. Indeed, Mr. Saari was not a member of the House (Am. Compl. ¶ 204), not a member of the Select Committee (*id.*), did not testify in the House proceedings (his testimony was stricken and not considered (Am. Compl. ¶ 383)), and did

not participate in investigating Mr. Courser (Am. Compl. ¶ 193).  Thus, the Court must deny the motion as to Mr. Saari and should sanction Mr. Courser for asking for this relief against him.

### III. Rule 37's Concerns Are Not Implicated Because Reasonable Steps Were Taken To Preserve Relevant Evidence And Because Discovery Has Not Yet Begun

Any sanction for failing to preserve ESI under Rule 37(e) is derived from the court's power to sanction discovery violations.  *Konica Minolta*, *supra*, at *2.  Here, discovery has not begun and therefore it is impossible to determine if any potentially relevant ESI has not been preserved.  As Magistrate Judge Patti of the Eastern District of Michigan observed, "at least one Court has stated, '[f]or the Court to impose sanctions under Rule 37 . . . there must be a violation of a discovery order.'"  *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 775–76 (E.D. Mich. January 10, 2019) (quoting *Bayoil, S.A. v. Polembros Shipping Ltd.*, 196 F.R.D. 479, 482 (S.D. Tex. 2000)) (brackets and ellipses in original).  Because no discovery orders have been entered, Mr. Courser's motion should be denied outright or denied without prejudice pending discovery.

"The new version [of Rule 37] eliminates the requirement of a culpable state of mind from subsection (e)(1), instead focusing on prejudice to the moving party."  *Konica Minolta*, *supra*, at *4.  Here, reasonable steps were taken to preserve relevant information and Mr. Courser cannot show prejudice.  A litigation hold was implemented and followed, resulting in several hundred pages of materials relevant to the House's investigation that were included in the HBO Report.  Ex. 1, at pp. 305–06, 308–09.  This hardly can amount to failing to take reasonable steps and stands in stark contrast to a situation, for example, where a party fails to institute any sort of litigation hold whatsoever.  Even then, the Second Circuit rejected the argument that a party's failure to implement any litigation hold amounts to gross negligence *per se*.  *See Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 516 (6th Cir. 2014).  If failing to implement any sort of hold does not amount to gross negligence *per se*, Mr. Courser cannot show that he was prejudiced

{ELG15093}                                            7

given the records he has in his possession or show that anyone acted with intent to deprive him of the use of any particular information in litigation.

In addition, after a three-day evidentiary hearing in Mr. Courser's criminal case in Lapeer County Circuit Court, all that was shown was that when certain computers were turned on or plugged in to charge, automatic updates occurred to the operating system. Ex. 2, May 2, 2018 Transcript of Judge Holowka's Ruling in Lapeer County Circuit Court Case No. 17-013022-FH, *People v. Courser*, at pp. 13–14. After hearing all of the same arguments and weighing the same evidence before the Court here, Judge Holowka said it best regarding the records of which Mr. Courser complains are no longer available to him—they are "completely irrelevant[.]" *Id.* All of Mr. Courser's arguments "presuppose . . . that material evidence was formerly in the opposing party's possession but is now inaccessible[,]" (*id.*) yet, after three days of hearing the same evidence before the Court here, Judge Holowka ruled that Mr. Courser still had "not offered any evidence whatsoever to set up the first domino in the logical sequence which is that material evidence favorable to the defense was formerly housed on any of these computers." *Id.*

Mr. Courser's complaint about the deletion/non-preservation of the Lync instant-messaging program and the accompanying messages is likewise a non-starter. Pltf.'s Mtn. ¶ 13. First and foremost, the program does not automatically save or retain any messages. Thus, these messages would neither have been preserved in the ordinary course of the House's business, nor caught by a litigation hold as implemented here in August 2015. Second, Mr. Swartzle testified that he had never used the program before and no knowledge about the program being removed from any of the computers. Ex. 1, at pp. 304–05. Third and finally, it can be fairly assumed that any messages sent using the Lync program that were relevant to Mr. Courser and the litigation hold would have been sent in the months leading up to the article in the Detroit News in August

2015.  So, even if the Lync messages were retained for a 30- or 60-day period, the messages from at least March-May 2015 would not have been retained in any event.  Mr. Courser does not provide any reason or evidence to show that the Defendants or Mr. Saari or Mr. Swartzle were on notice about potential litigation any earlier than August 2015.  Pltf.'s Mtn. ¶ 14.  For all of these reasons, it is even more patently unreasonable for Mr. Courser to ask for sanctions arising out of the alleged removal of the Lync program or any messages.

As to the argument about the use of Bitlocker, this is equally unhelpful to Mr. Courser. Again, Judge Holowka's observations are instructive on this issue:  "[T]he conclusion that evidence was suppressed on the two devices that were encrypted with what is known as a BitLocker is less than tenuous because substantially the entire hard drive is inaccessible. However, **there is no indication that any on those devices would have been favorable to the defense.**" Ex. 2, at p. 14 (emphasis added).  To boot, Mr. Swartzle testified that he had no knowledge about what Bitlocker was or about whether Ms. Hunter had implemented the same on any computers. Ex. 1, at pp. 300–01.  As with all of the arguments and alleged evidence of spoliation in the criminal case, the key flaw with Mr. Courser's motion here too is that he only "hypothetically indicate[s] that somehow there was exculpatory evidence [on the computers]" and never explains "what the exculpatory evidence was."  Ex. 2, at pp. 18–19.  Mr. Courser provides no compelling reasons for this Court to depart from Judge Holowka's ruling.  Mr. Courser's motion must be denied.

### IV. Mr. Courser Makes No Showing Of Intent Relative To Any Relevant Information That Was Allegedly Unpreserved

"Rule 37(e)(2) sanctions are available to address the prejudicial effect of lost ESI only if the loss is shown to have been motivated by an 'intent to deprive another party of the information's use in the litigation.'"  *Konica Minolta*, *supra*, at *8.  While Mr. Courser's expert opines that information was intentionally modified, deleted, or changed, Mr. Courser fails to describe any of

the information that was unpreserved and fails to explain the relevance of any information that was unpreserved to this litigation.  Ex. 2, at pp. 13–14.  In fact, Mr. Courser cannot show that any relevant information was lost or that it cannot be otherwise obtained with discovery in this case.  Put simply, upon learning of the situation with Mr. Courser, Mr. Swartzle instructed the House's staff to preserve *relevant* information.  Pltf.'s Mtn. ¶ 7; Ex. 1, p. 305.  *Relevant* information was, in fact, preserved in accordance with Mr. Swartzle's instructions and in accordance with the House's standard procedures.  Ex. 1, at pp. 305–06.  Mr. Courser's dissatisfaction with the helpfulness of the information he has received—without specifically identifying any *relevant* information that was unpreserved and without conducting any discovery in this case—is woefully insufficient to lay the foundation about prejudice or intent to deprive Mr. Courser of the use of the information in this litigation on part of Mr. Saari or Mr. Swartzle.

## CONCLUSION

For all of these reasons, Mr. Saari and Mr. Swartzle respectfully request this Court deny Mr. Courser's motion and award any other relief this Court deems just and proper.

          Respectfully Submitted,

          EVANS LAW GROUP, P.C.

          By:  /s/ Kevin C. Majewski
                Cameron J. Evans (P47276)
                Kevin C. Majewski (P79292)
          950 W. University Drive, Suite 200
          Rochester, MI 48307-1887
          Phone: (248) 564-1539
          Email:  cevans@evanslawgrp.com
                    kmajewski@evanslawgrp.com

Dated:  June 11, 2019          Attorneys for Defendants Norm Saari
          and Brock Swartzle

## CERTIFICATE OF SERVICE

  I hereby certify that on June 11, 2019 I electronically filed the foregoing **Defendants Norm Saari And Brock Swartzle's Response To Plaintiff Todd Courser's Motion For Sanctions Pursuant To Rule 37 Based On Destruction Of Evidence And Spoliation Of Evidence** with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

              <u>/s/ Julia Tibbs, Legal Assistant</u>
              Evans Law Group, P.C.
              950 W. University Drive, Suite 200
              Rochester, MI 48307-1887
              Phone: (248) 468-1665

Dated: June 11, 2019